## Williams v. Quarles

*[Cite as 3 AOA 217]*

*Case No. 57090*
*Cuyahoga County, (8th)*
*Decided May 31, 1990*

218

Michael Troy Watson, Esq., 1376 East Sixth Street, 400 Lincoln Building, Cleveland, Ohio 44114, for Plaintiffs-Appellants.

Donald C. Williams, Esq., 33 Public Square #700, Cleveland, Ohio 44113, for Defendants-Appellees.

DYKE, J.

This is an appeal by both parties from the judgment of the court of common pleas, following the trial court's grant of a directed verdict in favor of defendants on all the claims asserted by plaintiffs and of the grant of a directed verdict in favor of plaintiffs on defendants' counterclaim.

Defendant, Al Quarles, is the owner of the defendant Telecable Broadcasting of America (TBA), a cable television company. The plaintiffs, Harvey Williams, Carlotta Williams and Frank Incandella were involved in video production. The record indicates that plaintiffs approached defendants about using defendants' premises for their video productions operations. The defendants, wishing to help plaintiffs, agreed to allow them to use their premises. As a result of a meeting between plaintiff Harvey Williams and defendants it was agreed that Williams could use the premises in exchange for plaintiffs doing occasional local-origination production for defendants. The work performed by plaintiffs would fulfill TBA's obligations as a local cable company. It is clear from the record that plaintiff Carlotta Williams and plaintiff Frank Incandella never had an agreement with the defendants but rather formed some sort of partnership with plaintiff Harvey Williams. Both acknowledged never making any separate agreement or contract with defendants. Neither plaintiff considered themselves employees of the defendants.

The record indicates that the terms of the agreement between plaintiff Harvey Williams and defendants was never specifically set forth in a writing agreed upon by the parties. Plaintiff Harvey Williams described the agreement as "loose" and admitted it evolved and changed over time. The record shows that plaintiff Harvey Williams was concerned about the indefinite situation that existed and attempted to have defendants sign a proposed contract that he had prepared. The record indicates that defendants never signed nor agreed to any proposed writing and it is clear that plaintiff Harvey Williams knew his proposed contract had not been signed or returned. The defendants never approached plaintiffs in order to define the terms of their agreement.

The plaintiffs moved their own equipment into defendants' premises and conducted their operations there for approximately 16 months. At no time did they receive any compensation from defendants. It was the plaintiffs' hope that someday their efforts would prove profitable and that they would be given a share of the company's profits. Again, no details had been specifically agreed upon. Plaintiffs, on another occasion, again attempted, by way of a letter to defendant, to define an agreement of goals, objective and methods. These questions were never resolved and the relationship remained in question.

It was undisputed at trial that plaintiff Harvey Williams had borrowed approximately $500.00 from the defendants.

After operating from the defendant's premises for approximately 16 months, the plaintiffs arrived at work one day to find that defendant Al Quarles had issued orders that they were not allowed admittance into the building. According to the plaintiffs, defendant's actions came as a complete shock. Defendant Al Quarles testified that plaintiffs had in fact told him they were leaving the building and had already, prior to the lockout, removed some of their equipment. Defendant stated that because he was afraid his loan to plaintiffs would not be paid back and that he would not be given back other property, he refused them access until all debts had been settled. It is undisputed that defendant Al Quarles repeatedly refused the plaintiffs access to their own video cameras, property, files, information, business plans and other materials. It wasn't until approximately 2 years later, and by court order, that plaintiffs received most of their equipment back. At trial, plaintiffs claimed that some property was still being held by defendants.

Plaintiffs filed suit against defendants alleging breach of contract, unjust enrichment, conversion, fraud, breach of an employment contract and wrongful ejectment. Defendants counterclaimed alleging plaintiffs owed them a balance on a loan.

After an exhaustive trial mostly comprised of redundant, irrelevant questions and testimony, the court granted a directed verdict in favor of plaintiffs on defendants' counterclaim and a directed verdict in favor of defendants on all of plaintiffs' claims.

Both parties appeal. Plaintiffs assign eleven error for review and defendants assign one cross-assignment.[1]

## I

We will initially deal with the issues raised by the plaintiffs in their third, fourth, sixth, seventh, eighth and tenth assignments of error as they all deal with the trial court's grant of a directed verdict in favor of defendant on all issues.

Civil Rule 50(A)(4) of the Ohio Rules of Civil Procedure states:

"(4) When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, *finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion* and direct a verdict for the moving party as to that issue." (Emphasis added.)

A party against whom a motion for a directed verdict is made is entitled to have the evidence construed most strongly in his favor, but after presenting the evidence to such a favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him. *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215.

In the present case the trial court granted a directed verdict on all the plaintiffs' causes of action.[2] The plaintiffs argue that a directed verdict on their causes of action was improper.

A. *Breach of Contract.*

Plaintiffs argue that they presented sufficient evidence which showed that a "contract" existed between the parties which entitled plaintiffs to the use of defendants' premises in exchange for various services they performed.

It is often stated that the requisites of a contract are (1) a promise by a party having the legal capacity to act, (2) two or more contracting parties, because the common law rule is that no man may contract with himself, (3) mutual assent (4) consideration, (5) the agreement must not be void. 1 Williston, Section 18. The agreement ordinarily is reached by a process of offer and acceptance. If more than two persons are intended to be parties to a proposed contract, the contract does not come into being unless all parties manifest their assent. 1 Corbin, Section 12; Restatement, Contracts (2d), Section 23.

In the present case, plaintiffs did not present sufficient evidence to establish the elements of any contract between the parties. Plaintiff Frank Incandela never spoke to defendants about any

contract or obligation nor did he ever rely on anything defendants said. Plaintiff Carlotta Williams testified that her understanding was with plaintiff Harvey Williams and not the defendants. Plaintiff Harvey Williams testified that the parties had no written agreement and that the deal was a handshake agreement. Plaintiff Williams testified that at one point he prepared, signed and submitted a contract to defendants because their roles and obligations evolved and were never definite or certain. Plaintiffs never received the proposed contract from defendants. The record shows a lack of certainty as to plaintiffs' obligations and rights. No agreement had ever been reached between the parties on goals, objectives, compensation or operating methods. The record demonstrates a lack of sufficient evidence which would demonstrate the existence of a contract between plaintiffs and defendants. Plaintiffs assignment of error is overruled.

### B. *Unjust Enrichment.*

Plaintiffs failed to present evidence which showed that an unjust benefit was conferred on the defendants. The general rule is that one who gains the labor or property of another must make reasonable compensation therefore. Thus, one is unjustly enriched if the retention of a benefit would be unjust or one profits or enriches himself inequitably at anothers expense. *McClanahan* v. *McClanahan* (1946), 79 Ohio App. 231. The plaintiff must show, that under the circumstances, he has a superior equity and that it would be unconscionable for the defendant to retain the benefit. *Cincinnati* v. *Fox* (1943), 71 Ohio App. 233. "In the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he receives from the other that which it was agreed between them he should receive." *Ullman* v. *May* (1947), 147 Ohio St. 468.

The plaintiffs in the present action failed to show that defendants were unjustly enriched at their expense. The plaintiffs' own testimony supports that defendants never monetarily profited from their presence. The record indicates that plaintiffs borrowed funds from defendants to continue their operation and did not pay them back in full. Further, the record indicates that defendants provided plaintiffs space in their building in order for plaintiffs to operate their business. The record does not show that a quasi-contract existed between the parties so as to entitle plaintiffs to damages on a claim of unjust enrichment.

### C. *Conversion.*

Plaintiffs argue that they introduced sufficient evidence to support their claim of conversion. As stated earlier, Civ. R. 50 allows a directed verdict only when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the court finds that upon any determinative issue reasonable minds can come to but one conclusion upon the evidence submitted and the conclusion is adverse to the party. Conversely, a trial court must submit an issue to the jury when there is sufficient evidence, if believed, to permit reasonable minds to reach different conclusions on that issue. *O'Day, supra.*

Conversion is a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his right. *Herr-Morr, Inc., et al.* v. *Herring Enterprise, Inc., et al.* (October 27, 1988), Cuyahoga App. No. 54540, unreported. While the return of the property does not nullify the conversion he can still obtain compensation to make him whole if the property is returned. *Silverberg* v. *Thomson, McKinnon Securities, Inc., et al.* (Feb. 14, 1985), Cuyahoga App. No. 48545, unreported.

At trial, it was undisputed that defendants locked the plaintiffs out of the building in which they had been working and refused them access to their equipment. Plaintiffs'evidence clearly indicated that their equipment and property remained in the control of the defendants until it was released several months later. The record further reveals a colorable claim that plaintiffs suffered damages because they were unable to use their equipment and therefore lost business. Further plaintiffs testified that defendants at the time of trial still held some of their property.

Plaintiffs presented at trial sufficient evidence to allow this issue to be submitted to the jury. The trial court's grant of a directed verdict on the issue of conversion is overruled.

### D. *Fraud.*

In order to maintain an action in fraud a plaintiff must present evidence which shows:

"(1) a false representation;

"(2) knowledge of the falsity on the part of the person making the representation;

"(3) an intent to mislead others in relying upon the representation;

"(4) reliance, with a right to do so, upon the representation by the party claiming injury; and

"(5) injury resulting from that reliance." *Schwartz* v. *Capital Savings & Loan Co.* (1978),

56 Ohio App. 2d 83. All of these elements must be supported by evidence or the cause of action cannot be maintained.

After a review of the record, we fail to discern evidence which would establish the elements of fraud. The trial court did not err in granting a directed verdict on the issue of fraud.

E. *Breach of an Employer-Employee Contract.*

Plaintiffs argue that they were employees of the defendants and that defendants actions resulted in a breach of their employer-employee relationship.

Employer-employee indicates a relationship where one employs another to perform certain tasks and that the employer has the right to control and dictate the manner in which those tasks are to be performed. 39 O. Jur. 3d *Employment Relations*, Section 20.

The evidence in the present case indicated that plaintiffs never were paid or expected to be paid by defendants; that plaintiffs were given great latitude in producing the requested projects; that the manner of how the work was to be accomplished was left to plaintiffs discretion and; that plaintiffs testified they never considered themselves employees. The undisputed facts indicate that insufficient evidence existed to categorize the relationship between plaintiffs and defendants as employees-employers. Even assuming there was sufficient evidence to indicate an employer-employee relationship existed, plaintiffs argument would still fail.

It is well established that Ohio adheres to the employment at-will doctrine. *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100. In *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100 the court set forth the employment at-will doctrine as follows: "unless otherwise agreed, either party [employer or employee] ... may terminate the employment relationship for any reason which is not contrary to law." In *Henkle* v. *Educational Research Council* (1976), 45 Ohio St. 2d 249, the court explained the employment at-will doctrine.

"Although not absolute, the above stated rule appears to be in the nature of a strong presumption in favor of a contract terminable at will *unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other*. The presumption is grounded on a policy that it would otherwise be unreasonable for a man to bind himself permanently to a position, thus eliminating the possibility of later improving that position. Moreover, a contract of permanent employment is by its very nature indefinite, and thus any effort to interpret the duration of the contract and assess the amount of damages becomes difficult." (Emphasis added.)

Thus, an employment contract will be presumed to be at-will unless there are "facts and circumstances which indicate that the agreement was for a specified term." *Henkle, supra.*

The record indicates in the present case that there was no contractual intent between the parties. Plaintiffs' employment as a matter of law was at-will. The record clearly shows that plaintiffs' employment was terminable at-will by either party and was not modified or altered by any subsequent *mutual assent.* Reasonable minds could only conclude, after construing the evidence in a light most favorable to the plaintiffs that plaintiffs employment was terminable at-will by either party. The trial court correctly granted a directed verdict on this issue.

F. *Wrongful Ejectment.*

Plaintiffs argue that they were removed from the premises without notice and in violation of the terms of a contract.

As we have stated earlier, insufficient evidence was presented to indicate that any contract existed between the parties. Thus plaintiffs' arguments that a breach occurred once again fails.

Defendants are correct when they point out that the terms "wrongful or forcible ejectment" are used in Chapter 5321 and 1923 of the Ohio Revised Code relative to issues involving residential properties. The record is devoid in the present case of any evidence offered to show that the premises were used for anything other than commercial property and that plaintiffs' presence was anything other than in a commercial setting. The record indicates that plaintiffs never has a key to gain access to the building. Plaintiffs' claims were properly dismissed.

II

In their first assignment of error plaintiffs argue the trial court erred in not admitting certain documents into evidence.

Plaintiffs initially complain that Exhibit 1, a list compiled by the plaintiffs indicating the value of their property returned by defendants, was wrongly excluded from evidence. The record shows that defendants did not object to its introduction into evidence and even stipulated to the accuracy of its contents. We believe the trial court was in error in denying its admissability as the exhibit was relevant to the plaintiffs claim of conversion which we have previously determined

to be colorable. Plaintiffs' assignment of error is well taken.

Plaintiffs next complain that the trial court erred in not admitting into evidence a copy of a proposed contract prepared and signed by plaintiff Williams. This argument is not well taken. The plaintiffs' own testimony showed that the contract was never signed by defendants and that the plaintiffs knew they were assuming the risk that defendants would never sign a contract. Plaintiffs failed in demonstrating the relevancy of this document. The trial court did not err in excluding this document. This section of the plaintiffs' first assignment of error is overruled.

### III

In their second assignment of error plaintiffs argue that the trial court abused its discretion in denying plaintiffs' motion to amend their complaint pursuant to Civ. R 15(B).

Civ. R. 15(B) states:

"(B) Amendments to conform to the evidence. *When issues not raised by the pleadings are tried by express or implied consent of the parties*, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of their issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, *the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby* and objecting party fails to satisfy the court that the admission of such evidence would prejudice him in his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence." (Emphasis added.)

Plaintiffs requested at trial that their complaint be amended to include a cause of action for breach of an employment contract.

The plaintiffs failed to present at trial sufficient evidence which showed that an employer-employee relationship existed. The trial court acted properly in denying their request.

### IV

In their fifth assignment of error plaintiffs ask this court to reverse the judgment below because the trial court did not act impartially.

Plaintiffs set forth a number of claims which they state, taken together, indicate that the court did not act impartially towards them.

Plaintiffs argue that a trial court habitually sustained defense objections; that defense continuances were allowed; that the trial court did not have before it during trial a copy of the amended complaint and; that the trial court made several improper evidentiary rulings. Plaintiffs conclude that defendants clearly received more favorable consideration.

Plaintiffs have failed to specifically show that the rulings on the defense objections were improper; that the trial court's lack of the amended complaint made a difference in the outcome;[3] that the evidentiary rulings are so prejudicial so as to constitute reversible error and; that the allowance of the defense continuances were prejudicial.

This assignment of error is overruled.

### V

In their ninth assignment of error plaintiffs argue that the trial court abused its discretion in denying their motion for mistrial and in denying their motion for a new trial. Plaintiffs argue on appeal that the trial judge was perhaps biased in favor of defendants. Plaintiffs stated that the trial judge is a relative of an attorney who formerly represented defendants and assisted defendants in obtaining a start up loan for their business in the amount of two million dollars.[4]

It is within the discretion of a trial court whether to grant a mistrial. See generally, *Goudy* v. *Dayton Newspapers, Inc.,* 14 Ohio App. 2d 207. In this instance the trial court did not abuse his discretion in denying plaintiffs' motion for mistrial.

The record in the instant case reveals that plaintiffs found out about the trial court's brother's involvement in securing defendants a loan over a weekend during the course of the trial. The record further reveals that the trial continued the following Monday but that plaintiffs never brought the matter to the trial court's attention until the trial court granted a directed verdict against them. We believe that plaintiffs' actions constituted a waiver of what they now complain to be prejudicial error requiring reversal. Plaintiffs could have brought the matter to the trial court's attention prior to the final verdict. Their assignment of error is overruled.

The arguments contained in the plaintiffs' Motion for New Trial have been addressed in the first assignment of error. These arguments would not constitute grounds for new trial pursuant to

Civ. R. 59(A) and hence the trial judge was correct in denying the motion.

This assignment of error is overruled.

## VI

In their eleventh assignment of error plaintiffs argue that the trial court issued findings of fact and conclusions of law which were improper and barred by law because the trial court was not the finder of fact.[5] However, the record indicates that the findings of fact and conclusions of law were issued at the plaintiffs' request. Generally, "a party will not be permitted to take advantage of an error which he himself insisted or induced." *Hal Artz Lincoln-Mercury, Inc.* v. *Ford Motor Company* (1986), 28 Ohio St. 3d 20, paragraph one of the syllabus. Plaintiffs argument is overruled.

Plaintiffs next contend that the trial court departed from its standard of impartiality by essentially rubber stamping the defendants' proposed findings of fact and conclusions of law. The record indicates that plaintiffs never objected to the defendants' proposed findings of fact and conclusions of law which were eventually adopted by the trial court. Absent an objection at trial the plaintiffs have waived this argument on appeal. *State* v. *Williams* (1977), 51 Ohio St. 2d 112.

## VII

Lastly, we will address defendant's, cross-appellants' sole assignment of error. Defendants claim that the trial court on its own initiative, improperly granted a directed verdict against them on their counterclaim. The defendants' counterclaim alleged that an oral contract existed between the parties whereby defendants had loaned plaintiff Harvey Williams $500.00. Defendants alleged that plaintiff refused to pay them despite their demands, until the defendants refused plaintiffs access to the building. The record indicates that both parties agree that the transaction was a loan and that the amount loaned was to be repaid. At the trial, it was undisputed that plaintiff Harvey Williams had made periodic payments to defendants since being locked out of the building, but still had not repaid the loan in full. There existed evidence on the record which, if construed most strongly in favor of the defendants, would allow reasonable minds to come to different conclusions. Defendants' assignment of error is well taken. The trial court's grant of a directed verdict on defendants' counterclaim is reversed.

## CONCLUSION

The trial court's rulings on plaintiffs' cause of action for conversion and defendants' counterclaim are reversed. Also, the trial court erred in disallowing plaintiffs' Exhibit 1 to be admitted into evidence. The trial court's rulings on all other counts are affirmed. The cause is remanded to the trial court for further proceedings on plaintiffs' conversion claim and defendants' counterclaim.

*Judgment affirmed in part, reversed in part, and cause remanded.*

NAHRA, P.J., and MCMANAMON, J., concur.

---

[1] See Appendix.

[2] The plaintiffs causes of action were: "breach of contract; unjust enrichment; wrongful dominion over property; fraud; breach of an employment contract; wrongful ejectment."

[3] A comparison of the original and amended complaint reveals no substantive differences.

[4] The apparent gist of plaintiffs argument is that the motion for mistrial should have been granted because the judge could not have and did not act impartially.

Canon 3 of the Code of Judicial Conduct states in part:

"A. Adjudicative Responsibilities.

"(1) A judge should be faithful to the law, and maintain professional competence in it. He should be unswayed by partisan interest, public clamor or fear or criticism."

We note that prior to trial the judge pointed out to all parties that for approximately 18 years he and his family had owned a cablevision company in Florida. The judge related that before trial the business had been sold. The trial court, at the motion for mistrial hearing admitted to meeting weekly with his family, including his brother, but denied ever knowing or discussing the loan his brother helped obtain for the defendants.

Canon 3 of the Code of Judicial conduct requires a judge to disqualify himself in any proceeding in which he has a substantial financial interest and to advise counsel where he or his family have any financial interest in the proceedings. The record reveals that the trial judge did all he could in advising the parties of a prior financial interest in a cable company. The record reveals that all parties agreed that the trial judge should nevertheless hear the case. The record does not reveal a knowing violation of Canon 3.

[5] *Paramount Supply Co.* v. *Sherlin Corp.* (1984), 16 O. App. 3d 176 states in its first syllabus, "When a trial court does not assume the role of fact finder, as in issuing summary judgment rulings, it has no duty to issue findings of fact under Civ. R. 52."