GOUDY, APPELLEE, *v.* DAYTON NEWSPAPERS, INC., ET AL., APPELLANTS.

[Cite as Goudy v. Dayton Newspapers, Inc., 14 Ohio App. 2d 207.]

(No. 3066—Decided March 30, 1967.)

*Mr. Jerome Bohman,* for appellee.
*Messrs. Estabrook, Finn & McKee, Mr. John O. Henry*
and *Mr. Robert P. Bartlett, Jr.,* for appellants.

SHERER, J. This is an appeal on questions of law from a judgment rendered by the Common Pleas Court of Montgomery County on a jury verdict in favor of plaintiff, appellee herein, Robert A. Goudy, and against defendants, appellants herein, Dayton Newspapers, Inc., and Glenn Thompson, in a libel action. The parties will be referred to hereafter in this opinion as plaintiff and defendants.

The evidence establishes the following facts: On March 8, 1961, Dayton Newspapers, Inc., published the following article on page 1 of its Journal-Herald:

"DO AS I SAY, NOT AS I DO!

"As credit counselor for the First National Credit Bureau at West Milton, Robert A. Goudy frequently advised clients not to spend more money than they have.

"Yesterday Goudy filed for bankruptcy in the U. S. District Court here. He listed debts of $2,443.00 and assets at $250.00. He said there were 14 creditors."

Plaintiff, at the time of the publication, was a credit counselor for First National Credit Bureau, but his duties consisted of calling on clients and soliciting delinquent accounts from these clients for collection. It was no part of plaintiff's duties that he counsel with and advise debtors.

Defendant Glenn Thompson was the managing editor of the Journal-Herald at the time of the publication on March 8, 1961.

The first assignment of error is that the Common Pleas Court erred in holding the publication to be libel per se as a matter of law.

The second assignment of error is that the court refused to give special charges A, B, C and D of defendants, which were based upon the proposition of law that the jury, under the facts in this case, should determine whether the publication was libelous.

The fourth assignment of error is that the Common Pleas Court erred in charging the jury that the publication was libelous per se.

In *Becker* v. *Toulmin*, 165 Ohio St. 549, the Supreme Court held that: "Where the words of a publication are not ambiguous or uncertain as to their definition, it is the sole function of the court to determine whether such words constitute libel per se, and it is error to leave such question to a jury."

In *Cleveland Leader Printing Co.* v. *Nethersole*, 84 Ohio St. 118, it is stated, as follows, in the second paragraph of the syllabus:

"To constitute a publication respecting a person libelous *per se*, it must appear that the publication reflects upon the character of such person by bringing him into ridicule, hatred or contempt, or affects him injuriously in his trade or profession. * * *"

If language in a publication has of itself the foregoing effect, then that language constitutes libel per se, and the one so libeled may maintain an action for libel and recover damages, without pleading or proving special damages. In such a libel, malice is presumed and damages may be allowed for the effect of the libel upon the person libeled. However, in order to constitute libel per se, it must appear that the words in the publication, of themselves, injuriously affect the person concerning whom they are said. If they can reasonably have another and innocent meaning and are not libelous of themselves, they cannot constitute libel per se. *Becker* v. *Toulmin*, 165 Ohio St. 549.

It is defendants' contention that the article was obviously written in jest and was not libel per se and that the question of whether it was libelous should have been submitted to the jury. It was obviously written in jest, and the jury so found in its answer to interrogatory No. 3. Defendants cite *Renew* v. *Serby*, 237 S. C. 116, 115 S. E. 2d 664, in support of their argument.

In that case the plaintiff alleged that the defendant, in the presence of one or more fellow employees, spoke certain words of plaintiff, which were intended to and did impute to plaintiff a want of chastity in that defendant, plaintiff's supervisor, alluded to her as his girl, stated that she would have to work the next day and assertedly indicated to her that she should refrain from having relations with her husband that night.

The court held that the words used were ambiguous; that at best they were susceptible of interpretation that, because she would have to work the next day, she should refrain from marital intimacy the night before, and, at worst, as suggesting that she forego marital intercourse in favor of illicit relations with the defendant; but that such remarks were not reasonably subject to construction of charging her with unchastity and were not slanderous per se.

In that case, the Supreme Court of South Carolina stated the rule in slander cases in that state to be that, if the language is ambiguous and susceptible of two meanings, one slanderous and the other innocent, it must be left to the jury to determine.

Defendants cite also the language of Judge Hand in *Burton* v. *Crowell Pub. Co.*, 82 F. 2d 154, wherein he stated that: "a man must not be too thin-skinned or a self-important prig." The learned judge further stated in his opinion that: "It is indeed not true that all ridicule (*Lamberti* v. *Sun P. & P. Ass'n.*, 111 App. Div. 437, 97 N. Y. S. 694) * * * is actionable." In the *Burton case* the court held that: "Publication of picture which with legends was calculated to expose plaintiff to more than trivial ridicule *held* prima facie actionable, notwithstanding it did not assume to state a fact or an opinion, and notwith-

standing picture was patently an optical illusion and carried its correction on its face." The caricature of the plaintiff resulted from an unfortunate mistake of the camera, and the court stated that the caricature did not profess to depict plaintiff as he was.

The New York rule with respect to humorous words in libel actions is stated in *Triggs* v. *Sun Printing & Publishing Assn.*, 179 N. Y. 144, 155, 71 N. E. 739, 103 Am. St. Rep. 841, 66 L. R. A. 612, quoted in *Lamberti, supra,* as follows:

"* * * If, however, they can be regarded as having been published as a jest, then it should be said that however desirable it may be that the readers of and the writers for the public prints shall be amused, it is manifest that neither such readers nor writers should be furnished such amusement at the expense of the reputation or business of another. * * *"

The opinion further states that jest is not justification "unless it is perfectly manifest from the language employed, that it could in no respect be regarded as an attack upon the reputation or business of the person to whom it related."

The fourth assignment of error is that the trial court erred in its general charge in charging the jury that: "The court has determined that in view of this the article when read as a whole is libelous per se, and you are so instructed."

Upon consideration of the authorities cited, we conclude that the Common Pleas Court did not err in determining that the article in question here was libelous per se. Assignments of error 1, 2, 3 and 4 are without merit.

The fifth assignment of error is that the trial court erred in refusing to grant a mistrial or continuance during the course of the trial upon the motion of the defendants in order for the defendants to procure certain documentary evidence which was located in Detroit, Michigan, when such evidence had been represented to be in Dayton, Ohio, and subject to the subpoena *duces tecum* of the court.

The sixth assignment of error is that the trial court erred in overruling defendants' motion for a new trial

based upon accident or surprise which ordinary prudence could not have guarded against.

The record discloses that this action was filed on January 31, 1962; that it was at issue on March 18, 1964; and that it was tried in the Common Pleas Court, beginning April 7, 1965. From the original papers filed in this case it appears that on April 5, 1965, the deposition of Darwin Williams was taken in Detroit, Michigan, by the defendants; that, due to a misunderstanding of Michigan law relating to the taking of depositions by defense counsel, certain documentary evidence sought by counsel was not produced at the hearing or attached to and made a part of the deposition. It further appears that following April 5, 1965, and before trial on April 7, 1965, counsel were assured that such documentary evidence would be forwarded by Williams to Dayton, Ohio, for use at the trial. Counsel was further advised that it had in fact been received. It subsequently developed at the trial that such evidence had not been forwarded. It appears from the briefs that Mr. Williams was regional manager of the home office of plaintiff's employer, First National Credit Bureau.

The refusal of the trial court to grant a mistrial or a continuance for the purpose of securing such documentary evidence and the refusal of the trial court to grant a new trial for "surprise which ordinary prudence could not have guarded against" are matters which rest largely within the discretion of the trial court. We see no such abuse of discretion on the part of the trial court.

The seventh assignment of error is that the trial court erred in excluding from the deposition as it was read to the jury those portions of the deposition that referred to and described certain documentary evidence outside the jurisdiction of the trial court, and, therefore, the court also erred in failing to grant a new trial upon this basis.

It is argued that Darwin Williams, in his deposition taken in Detroit, referred to and described personnel records in the Detroit office of First National Credit Bureau which contained this notation: "Found this man in a motel with a 20 year old girl during working hours on March 10th. We fired him March 13th., he and the girl. K. W."

We see no prejudicial error in the action of the trial court in refusing to permit the testimony of Darwin Williams on his deposition where he read from the personnel records the reason shown for appellee's firing as quoted above. The record shows that counsel read Darwin Williams' deposition to the court out of the presence of the jury, including the quoted material. Counsel for plaintiff objected to the inclusion of the testimony quoted, and Mr. Henry, counsel for defendants, stated to the court: "We agree that this should be deleted." Furthermore, the testimony of Mr. Williams on his deposition was read to the jury, wherein he stated that plaintiff was fired because he had been in a motel with a girl when he was supposed to be working.

Likewise we see no error prejudicial to defendants in the action of the trial court in refusing to grant a new trial because of the court's refusal to permit Williams' testimony as to the quoted words from the personnel file to be read to the jury.

The eighth assignment of error is that the trial court erred in not granting the motions of defendant Glenn Thompson for a directed verdict at the close of the plaintiff's case, at the close of all of the evidence and for a judgment notwithstanding the verdict.

Assignment of error nine is that the court erred in permitting defendant Glenn Thompson to remain in the case as a defendant when it became evident at the conclusion of the plaintiff's case and later at the conclusion of the defendant's case that no cause of action had been proved with respect to this defendant, to the prejudice of the defendant Dayton Newspapers, Inc.

The managing editor of a newspaper is individually liable for a libel printed in his newspaper even though he does not have actual knowledge of the libel printed. 34 Ohio Jurisprudence 2d 262, 321, 322, Libel and Slander, Sections 100, 159.

The basis for defendants' motions is the claim that the words published are not libelous per se and that no special damages were proved. We have held that the Common Pleas Court did not err in holding that the article was

libelous per se. In such cases special damages need not be proved.

We see no merit in these assignments of error.

The tenth assignment of error is that the trial court erred in sustaining plaintiff's objection and motion to strike with respect to the probable cause for plaintiff's discharge, as shown by the record. Counsel for defendants was examining John H. Weber, manager of First National Credit Bureau when plaintiff was fired, when Weber testified that he noted on plaintiff's personnel records kept in the Dayton office that plaintiff was fired on March 13, 1961, for poor attitude, Oscar reports and because he was involved in a publicity stunt regarding filing of bankruptcy. He testified that "Oscar reports" involved the filing of false reports and that the publicity stunt referred to the article published in the Dayton Journal. He further testified that all hiring and firing of employees he did must be approved by the regional manager. He further testified that at the time plaintiff was fired he did not know about any immoral conduct of plaintiff. Weber said that he fired plaintiff because he and another employee, a girl, did not return to the office before quitting time and that the immoral conduct was developed later by the regional manager. He testified that the girl was fired because of the report of immorality. He was asked whether that would probably have been sufficient to fire plaintiff. He answered: "Probably."

The trial court sustained plaintiff's objection to the question and ordered the answer stricken, instructing the jury to ignore it.

We see no error in this ruling. Weber testified that he fired plaintiff for different reasons and that he did not know of the motel incident at the time. Mr. Williams testified on his deposition that plaintiff was discharged because he was with a girl in a motel; that he did not recall whether he caused plaintiff to be discharged; that he could have been the one who made the decision "had there not been another person not making the decision before me"; and that Mr. Weber (Dayton branch manager) would not have had to have his approval to fire plaintiff. Mr. Williams did not state who it was who discharged plaintiff.

It may fairly be inferred from the evidence here that plaintiff was fired by Weber who submitted his action to Williams for approval and that Williams, having been advised of the alleged incident at a motel, took no action himself.

Since Mr. Weber did not discharge plaintiff because of the alleged motel incident and the record does not show who may have done so, Weber's testimony that such incident probably would have been sufficient to bring about the discharge is pure speculation without probative value.

The eleventh assignment of error is that the court erred in its general charge with respect to damages. The general charge of the court, which is pertinent to this assignment of error, is as follows:

"The plaintiff is entitled to the verdict of the jury in this case for nominal or compensatory damages only. The article being libelous per se, the law presumes that the plaintiff has suffered damages from the publication thereof without proof of any actual damages by him suffered. If, as mentioned above, actual damages are not proved by a preponderance of the evidence, your verdict shall be for nominal damages only. Nominal damages has been defined as any trifling sum from one cent upward. The amount that shall be awarded to the plaintiff is committed to the sound discretion of the jury.

"The court can only direct the jury as to the elements of damages as may legally be considered. First, the jury should consider the age of the plaintiff and his family and social relations. Second, you should consider his occupation and his official position, taking into consideration the effect the libelous article had upon him in that capacity. Third, you should consider the question of whether or not the plaintiff has suffered mental anguish or distress. Fourth, you are required by law to include in your verdict reasonable attorney's fees to compensate him for the expense incurred in the prosecution of this case. The aim and purpose of awarding compensatory damages is to merely compensate the party and not to enrich the party."

It is defendants' contention that the court's general charge is prejudicial to them because it is inconsistent in that it instructs the jury that it might award only nominal

damages in a sum from one cent upward within its discretion and that it later instructs the jury that it is required to include in its verdict "reasonable attorney's fees."

We do not so understand the court's instruction. In the first paragraph of its instruction quoted above, the court is discussing nominal damages as distinguished from actual damages. The court stated that since the article was libelous per se the law presumes that the plaintiff has suffered damages, without proof of any actual damages. In the second paragraph of the charge quoted above, the court is instructing the jury as to the elements of actual damages that may be legally considered. The elements of actual or compensatory damages set forth therein could not possibly be confused with the instruction of the court in the preceding paragraph with respect to nominal damages.

The eleventh assignment of error is without merit.

The twelfth assignment of error is that the trial court erred in failing to grant defendants' motion for a new trial on the grounds that the verdict was excessive.

The thirteenth assignment of error is that the verdict and judgment are manifestly against the weight of the evidence.

The evidence bearing upon the issue of actual damage suffered by plaintiff is conflicting. Defendants contend that plaintiff suffered no actual damage because he was discharged because of an immoral act committed by him with a female in a motel room. Mr. Williams, who was in charge of the home office of First National Credit Bureau in Detroit, testified that the plaintiff was discharged because of the alleged motel incident which was not proved. On the other hand there is the testimony of the plaintiff that Mr. Weber, who was in charge of the Dayton office, told him that he was discharged because he and two other employees did not return to the office before the close of business on March 10, 1961. There is the further evidence in the form of plaintiff's personnel records in the Dayton office, which show that he was discharged for three reasons unrelated to the alleged motel incident and that the newspaper article

was one of the three reasons. The jury stated in an answer to an interrogatory that the article was a contributing factor in plaintiff's discharge. Although the evidence is conflicting on the issue of the reason for the plaintiff's discharge, the evidence is such that the jury could reasonably reach the conclusion that plaintiff was not discharged because of the alleged motel incident and that the newspaper article was a factor contributing to his discharge.

The evidence shows that plaintiff went to work for First National Credit Bureau in October 1960 at a base salary of $70 per week and that he steadily progressed in his work production-wise until he was earning between $90 and $100 per week, including salary and commissions, on March 13, 1961, when he was discharged. He testified that he went to work for Kreiger Motors on June 12, 1961, where he remained until November 11, 1961, when he was rehired by First National Credit Bureau. He testified that he earned from $50 to $60 per week at Kreiger Motors. He testified that he was unable to obtain employment for 13 weeks following his discharge on March 13, 1961, because of the newspaper article. Assuming that his average income at First National Credit Bureau would have continued, but for the newspaper article, as the jury could find, plaintiff would have lost approximately $1,235 in wages during the thirteen-week period, calculated at the rate of $95 per week.

The evidence shows that plaintiff earned $854 while working at Kreiger Motors for a period of 22 weeks. In that period of time he would have earned $2,090 at First National Credit Bureau had he not been discharged. The difference is $1,236, which plaintiff claims to have lost in wages because of his discharge. These two sums equal $2,471. The jury awarded special damages to plaintiff in the sum of $1,800 which the trial court cut to $1,300. This award is neither manifestly against the weight of the evidence nor excessive. It is fully supported by the evidence.

There is evidence that because of the newspaper article snide remarks were directed to plaintiff; that he was forced to explain the untruthfulness of the article to poten-

tial customers and friends; and that he was refused employment, all to the extent that he was reluctant to meet people.

The jury awarded plaintiff $3,000 for such damage including fees for his attorney. Such award is fully supported by the evidence. It is neither against the manifest weight of the evidence nor excessive.

There being no error in the record prejudicial to the rights of defendants, the judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and KERNS, J., concur.