**Patrick J. O'SHEA, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6924.**

United States Court of Appeals First Circuit.

June 12, 1968.

As Amended on Denial of Rehearing Aug. 15, 1968.

Certiorari Denied Jan. 27, 1969.

See 89 S.Ct. 726.

William P. Homans, Jr., Boston, Mass., by appointment of the Court, for appellant.

Edward J. Lee, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Defendant appellant O'Shea and one Paige were jointly tried for aggravated armed robbery of a federally insured bank. 18 U.S.C. § 2113(a), (d). Both testified in their defense—if it may be called such as to Paige, who, after the government rested, admitted his guilt but supported O'Shea's denial of complicity. Both were convicted, and O'Shea appeals.

A primary question arises out of the fact that the United States courthouse at Boston has only one corridor, used by the public, the jury and the defendants alike, and that both defendants, who had previously been convicted of armed robbery, were brought as far as the door of the courtroom handcuffed together the morning that trial was to start.[1] They were accompanied by two deputy marshals in mufti. A number of persons were in the corridor, some of whom were probably members of the venire. Defendants' counsel immediately called the incident to the court's attention and requested that a new venire be summoned. The court refused.

Before the impaneling of the jury the court asked the defendants to rise and face the venire. In the course of questioning the jurors for possible disqualification the court inquired whether there was "anything that you have read or seen or thought or heard about the case which in your view might prejudice you against either of the defendants," and received no response. Defendants then asked the court to inquire "whether they saw the defendants arrive, and, if so, whether they observed anything that would in any way prejudice their judgment in this case." The court declined, expressing the fear that "such a question would simply direct to the attention of the * * * panel the very episode which you think might operate to prejudice the jurors against the defendants."

At first blush one may wonder how a question that was totally blind could serve to emphasize a matter which it did not disclose. However, if some jurors had witnessed and some had not, which seems to us the most likely possibility, those who had not might well inquire

---

1. There is no indication that the court found this precaution necessary. Compare Odell v. Hudspeth, 10 Cir., 1951,

189 F.2d 300, cert. denied 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656.

later of the others what the court's inquiry was about. The court's analysis was correct. The requested question would not have been appropriate unless all of the panel had observed the incident. This was improbable, particularly where people were milling about the corridor and the defendants were not yet known.

Recourse to this logic, however, indicates that the question the court did ask was less than satisfactory. The trial lasted several days. It would seem quite possible, even without stimulating questions, that in such a period a juror who had seen the defendants in handcuffs would have mentioned this fact to some fellow jurors. In such event, as to such jurors the court's question as to prejudice would not have been answered. We cannot accept the government's contention that the jury's prejudice had been "clearly eliminated" by the court's question, or the applicability of Bayless v. United States, 9 Cir., 1952, 200 F.2d 113, cert. denied 345 U.S. 929, 73 S.Ct. 788, 97 L.Ed. 1359.

■ Though the defendants' question was ill framed, we would have preferred that some inquiry had been made. See United States v. Napoleone, 3 Cir., 1965, 349 F.2d 350. Where it was impossible to treat the infection, we think it would have been better had the court endeavored to eliminate it altogether by asking a blind question, to be answered by a show of hands, whether any juror had seen the defendants prior to their appearance in the courtroom. Such jurors could have been excused, without explanation. Or, if there proved to be a great number of them, the matter might have been dealt with by further questioning, or appropriate instructions. The jury could, for example, if it developed that a substantial number had witnessed the event, have been told that it was a mistake on the part of the marshals and not to be given any weight nor to diminish the presumption of innocence. Cf. Blaine v. United States, 1943, 78 U.S.App.D.C. 64, 136 F.2d 284. However, in this particular case we have special cause for concluding that this incident did not materially prejudice the appellant. When the defendants took the stand they testified without limitation that appellant had a prior record for armed robbery. If an error invites a response, the response cannot be taken as waiving the error. We cannot, though, think that the handcuff incident was the cause of the defendants' taking the stand. Once the jury learned of the defendants' past history the fact that the deputy marshals regarded them as requiring restraint lost much, if not all, significance.

■ Coming to the trial itself, defendants instructed by the later case of United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, argue that the court, sua sponte, should have ordered a voir dire with respect to the identifying witnesses. Passing the fact that this was a second trial, so that defendants had some knowledge of what the government's witnesses were going to say (an argument which does not, in itself, persuade us) *Wade* is not retrospective, except where the "totality of the circumstances" was particularly serious. Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The issue not being then apparent, the record was perhaps not as illuminating as it could have been. We rule that the court was not bound to explore the matter sua sponte, but this decision is without prejudice to the defendant's bringing a proceeding permitting further exploration, if so advised. As to the proper outcome of such a proceeding we of course express no views.

We find no other matter to require comment.

Affirmed.

## ORDER OF COURT

PER CURIAM.

■ Defendant, by motion for rehearing, attacks our conclusion that he was not substantially prejudiced by the possibility that some of the jury saw him in handcuffs in the courthouse corridor prior to the trial. Defendant says that the sting was not drawn, or was im-

properly drawn, by the testimony that he had been previously jailed for armed robbery, claiming that such testimony was admissible only for impeachment purposes and there was no such limiting instruction as to any inference that might be made from the handcuffs. The fallacy in this is that defendant himself, on direct examination for understandable tactical reasons, brought out that he had a prior criminal conviction, requesting no limitation. Nor did he request a limitation when the precise nature of that conviction was subsequently testified to. The testimony was in for all purposes. It is too late in the day for defendant to be talking about limitation.

The balance of defendant's motion relates to alleged matter not of record.