The STATE of Ohio, Appellee,

v.

. CHITWOOD, Appellant.

[Cite as *State v. Chitwood* (1992), 83 Ohio App.3d 443.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910457.

Decided Nov. 4, 1992.

444

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, for appellee.

*James Andrew Rader,* for appellant.

*Per Curiam.*

The defendant-appellant, Robert Chitwood, appeals from his conviction on one count of domestic violence with a previous conviction for the same offense, and aggravated burglary. Chitwood raises four assignments of error concerning the

trial court's failure to grant a mistrial or allow a proffer of evidence following Chitwood's assertion that the jury had viewed him in shackles and that the proximity of the deputy sheriff to his person throughout the trial prejudiced his defense. Furthermore, Chitwood assigns as error the trial court's failure to strike the specification to the domestic-violence count based upon an infirmity in the certified copy of the judgment entry purporting to show the previous conviction. Finally, Chitwood claims that the court erred in failing to dismiss a felonious-assault charge upon which he was acquitted. We find that none of the assignments is well taken and affirm.

Before the trial commenced, the following colloquy took place between the trial judge and defense counsel:

"MR. RADER: If I may, I would like to raise one other objection. If the record could indicate that the uniformed deputy sheriff is sitting about five feet to the left rear of my client, that I think is a prejudicial position, and I think it would be suggestive to the Court. I don't deny the need for security in any courtroom at any time, but I think a neutral position would be more appropriate.

"THE COURT: The sheriff can sit—he is just sitting over there by the blackboard. He can sit wherever he wants. As a matter of fact, the jury will be coming in. They will be sitting across. I won't tell him where to sit. Where he is sitting is fine."

Before the commencement of proceedings the following day, before the jury was brought in, there ensued this exchange:

"MR. RADER: Your Honor, I want to make a motion for a mistrial. The substantial basis for that is my client just walked past the jury out in the hall with his shoes chained and his hands cuffed behind him. In support of that motion, I would like to call Mr. Holiday, the guard, and voir dire—

"THE COURT: That's not necessary. He's going to take the stand; he going to say he's in custody. The jury knows he is in custody.

"MR. RADER: Your Honor, I would like to voir dire the jury.

"THE COURT: We are not voir diring. The motion is denied.

"MR. RADER: Your Honor, then I would like to state for the record—

"THE COURT: Whatever you want for the record, but we are not putting Deputy Holiday on the stand. He's very professional. He hasn't done anything wrong. I'm not putting him on the stand.

"MR. RADER: May I call Officer Holiday to testify in the record that he has stayed through this trial approximately five feet behind my client, and—

"THE COURT: Mr. Holiday is sitting in this courtroom. He is doing like he always does with every defendant who's in custody. He has a certain job to do. And Deputy Holiday is sitting there in a very professional manner. Your client is not being harassed. Your client is being quiet. There's nothing going on here that is improper.

"MR. RADER: Your Honor, I feel very strongly that a person should be allowed to defend a case on the merits in court other than in chains, and that's from—

"THE COURT: He's not in chains. He's sitting there and dressed up—

"MR. RADER: Paraded in front of [the] jury in chains, which—

"THE COURT: He was brought in front of the jury—When was he brought in front of the jury in chains?

"MR. RADER: That's exactly my point, Your Honor. That's what I want to establish.

"THE COURT: No, that's it. Motion is denied."

Later, Chitwood took the stand in his own defense. Prior to any questioning on direct examination, the following conversation took place:

"MR. RADER: Your Honor, I would like the record to reflect at this point, too, the officer is moving from behind my client to behind the defendant as he sits in the witness chair. I would like to object again and move for a mistrial.

"THE COURT: Overruled. Let's proceed."

Directly on taking the stand, Chitwood testified that he had a prior conviction for burglary, and that he had been charged with domestic violence twice. Then, following other testimony, Chitwood's own counsel questioned him as follows:

"Q. Richard, the ladies and gentlemen of the jury know you are in jail, don't they?

"A. Yes.

"Q. How do they know?

"A. They seen me and the officer walking through the hall with my hands cuffed behind my back.

"Q. Do you have any feelings about that?

"A. Yes.

"Q. Would you tell them what that is?

"A. I figured I would get a fair trial, and with them knowing I'm in jail, I'm already convicted and I'm a criminal.

"Q. One wouldn't expect that in an American court, would they, Richard?

"THE COURT: Mr. Rader, you know better than that. Now let's go on, please.

"MR. RADER: Well, Your Honor, I believe that myself.

"THE COURT: I'm not arguing with you.

"MR. RADER: Your Honor, if you want to hold me in contempt for that—

"THE COURT: Just move on and ask the next question. Now come on.

"MR. RADER: May I have a recess, Your Honor?

"THE COURT: No, just move on. Let's go."

Chitwood's first four assignments of error, which he argues together in his brief, read as follows:

"1. The trial court erred to the prejudice of the appellant by refusing to grant a mistrial.

"2. The trial court erred to the prejudice of the appellant by refusing to permit the defense to call Deputy Sheriff Holiday in order to fully describe the prejudicial events and conditions on the record.

"3. The trial court erred to the prejudice of the appellant by refusing to permit the defense to voir dire the jury as to prejudicial events and conditions in the courtroom.

"4. The trial court erred to the prejudice of the appellant by delegating his discretion as to security measures to the deputy sheriff."

■ An appellate court will not reverse a trial court's decision granting or denying a mistrial unless that decision was an abuse of discretion. *State v. Widner* (1981), 68 Ohio St.2d 188, 22 O.O.3d 430, 429 N.E.2d 1065; *Goudy v. Dayton Newspapers, Inc.* (1967), 14 Ohio App.2d 207, 43 O.O.2d 444, 237 N.E.2d 909.

■■ Chitwood moved for mistrial originally on the allegation that the jury had seen him in shackles in the hallway. As noted by one federal court, cases in which there is an allegation of a brief viewing of the defendant in shackles are inconsistent in their treatment of the issue and are "often characterized by a rather cavalier attitude by the courts that such contentions are frivolous." *Kennedy v. Cardwell* (C.A. 6, 1973), 487 F.2d 101, 108. The ultimate question is the degree of prejudice, if any, which such brief exposure caused. *Id.* at 109. "The majority of cases, if read literally, state that such a brief and fortuitous incident is not prejudicial and requires an affirmative showing of prejudice by the defendant." *Id.* The difficulty for the defendant is demonstrating such prejudice

in light of the aliunde rule contained in Evid.R. 606(B) prohibiting the jury from impeaching its own verdict.

Chitwood's second motion for a mistrial raised the same concern of prejudice from a different source: the positioning of the uniformed deputy sheriff so close to his person. As recognized in *Kennedy*, "guards seated around or next to the defendant during a jury trial are likely to create the impression in the minds of the jury that the defendant is dangerous or untrustworthy." *Id.* at 107. This inference can be particularly detrimental to the presumption of innocence where, as here, the charge is one of violence.

■ We cannot, obviously, find on this record that the trial court abused its discretion by not granting a mistrial. All we have on this record is an allegation that certain events occurred and an allegation that prejudice ensued from those events.

■ The court in *O'Shea v. United States* (C.A. 1, 1968), 400 F.2d 78, outlined a procedure to be employed where there is an allegation of a viewing of the defendant in shackles. First, the court asks the jury a blind question, to be answered by a show of hands, whether any juror has seen the defendant prior to his appearance in the courtroom. If there is an affirmative response, further questioning should ensue, and ultimately, if there has been a viewing of the defendant in shackles, the possibility of prejudice should be cured by an instruction by the court that the incident has been a mistake and that the jurors should not give it any weight or allow it to diminish the presumption of innocence. *Id.* at 80. A similar procedure should have been employed herein.

Although we find fault in the court's refusal to make such an inquiry, such error is not grounds for reversal unless it is prejudicial. In the case *sub judice*, we are convinced that the circumstances militate against a finding that either a viewing of Chitwood in shackles or the positioning of the deputy sheriff could have materially prejudiced his chances at trial.

As we have noted, Chitwood was charged, *inter alia*, with one count of domestic violence with a specification of a prior conviction on the same charge. The jury was, in fact, informed as early as the prosecutor's opening statement that Chitwood had a prior conviction of domestic violence. Chitwood, moreover, took the stand and testified of his own accord that he had been previously convicted of burglary and had been charged twice with domestic violence. Once the jury was legitimately informed of Chitwood's criminal past, and particularly the fact that he had already been convicted of the same violent crime for which he was presently on trial, the possibility of any prejudice inuring to him as a result of a brief viewing in shackles or the positioning of the deputy sheriff became extremely remote.

Furthermore, Chitwood subsequently testified that he was in jail and had been in the hallway in shackles. Such information, if it was meant to be in the nature of a proffer, could have been made part of the record differently. In essence, Chitwood chose to publish the fact of his incarceration and physical restraint to the jury when he need not have done so.

A very similar situation occurred in *O'Shea, supra.* Therein the appellate court found error in the trial court's failure to explore adequately the defendants' claim that they had been seen in the courthouse by the jury in shackles. The appellate court then noted, however, that the defendants afterward took the stand and testified "without limitation" that they had prior records for armed robbery. The court stated:

"If an error invites a response, the response cannot be taken as waiving the error. We cannot, though, think that the handcuff incident was the cause of the defendants' taking the stand. Once the jury learned of the defendants' past history the fact that the deputy marshalls regarded them as requiring restraint lost much, if not all, significance." *Id.* at 80.

■ We are drawn to the same conclusion in the case *sub judice.* We find, therefore, that none of the first three assignments gives rise to reversible error. The fourth assignment, that the trial court improperly delegated its authority regarding security matters to the deputy sheriff, is based upon an assumption, undemonstrated by the record, that the trial court did not exercise its own judgment. The fourth assignment of error is also overruled.

■ In his fifth assignment of error, Chitwood asserts that the trial court erred by overruling his motion *in limine* to strike the specification to the domestic-violence count of the indictment, and thereafter overruling his objections to the admission into evidence of a "journal entry" in support of the specification. His argument is that the entry in question fails to comport with Crim.R. 32(B) and thus is invalid and cannot support the enhancement of the offense from a misdemeanor to a felony.

Chitwood's argument proceeds upon a false premise: that introduction of a properly certified copy of a valid judgment entry is required to show the previous conviction. In *State v. Smith* (Oct. 11, 1989), Hamilton App. No. C–880404, unreported, we held that, although such a certified copy is sufficient to prove the prior conviction, it is not necessary.

■ Chitwood, moreover, does not challenge the sufficiency of the evidence to support the conviction except on this lone basis. In fact, Chitwood's former wife, Pamela, testified that she had filed domestic-violence charges previously against him, and that he had appeared in court, pleaded no contest, and was sentenced. This evidence alone was sufficient to support a finding of a prior conviction.

Chitwood's fifth assignment of error is, therefore, overruled.

In his sixth and final assignment of error, Chitwood asserts that the trial court erred by overruling his motion to dismiss the count of the indictment charging felonious assault. Chitwood contends that the state could not charge him with felonious assault and domestic violence for the same conduct because they are essentially the same offense and therefore Ohio case law requires that the state charge the "later-enacted and more specific domestic violence." See R.C. 1.52; compare R.C. 2919.25 and 2903.11(A)(1); *State v. Chippendale* (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134.

This argument fails on its premise since each of the two offenses contains a distinct element; therefore, they are not the same offense, nor are they allied and of similar import. *Id.* Chitwood was, moreover, acquitted of the felonious assault and, thus, even if we assume *arguendo* the validity of his premise, his argument fails for the lack of any demonstrable prejudice.

Based on the foregoing, the six assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., HILDEBRANDT and GORMAN, JJ., concur.