OPINION
{¶ 1} Defendant-appellant Teri L. Spees appeals from her conviction and sentence in the Stark County Court of Common Pleas on one count of arson, one count of aggravated arson and one count of receiving stolen property. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 3, 2002, appellant was indicted on one count of aggravated arson, in violation of R.C. 2902.02(A)(1), a felony of the first degree, one count of aggravated arson, in violation of R.C.2909.02(A)(2), a felony of the second degree, and one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fifth degree. At the arraignment held on September 6, 2002, appellant entered a plea of not guilty to the indictment.
 {¶ 3} Thereafter, appellant made a written plea of not guilty by reason of insanity. However, appellant's counsel eventually withdrew the plea and the matter proceeded to trial.
 {¶ 4} Trial was scheduled for October 21, 2002. However, during the voir dire process, one of the potential jurors indicated that she recognized appellant and that this recognition or familiarity with appellant was due to the fact that they had met at the Stark County Jail. A mistrial was declared and a second trial was scheduled.
 {¶ 5} The second trial began on November 4, 2002, and continued through November 8, 2002. The following evidence was adduced at trial.
 {¶ 6} Appellant and her husband, Kevin Spees, were having marital difficulties. On the morning of July 11, 2002, Kevin Spees left for work at 6:15 a.m. Kevin worked as an electrical contractor in Wadsworth, Ohio. As he left, he noticed a sympathy card on his truck. Someone had written inside the card "so sorry to hear about Teri and Morgan." Kevin Spees proceeded to Wadsworth and then to a job in Strongsville, Ohio.
 {¶ 7} At 10:34 a.m., Kevin Spees' debit card was used at the Massillon K-Mart department store near appellant's townhouse. Records from the K-Mart demonstrated that various supplies were purchased, including two, two gallon gasoline cans using Kevin's debit card. In addition, Kevin Spees' debit card was used at the same K-Mart for over $22.00 in gasoline.
 {¶ 8} Shortly thereafter on that same morning, Greg Goerke, a man who lived in the townhouse adjacent to appellant's townhouse, noticed appellant in the rear of their apartment building, outside the townhouse. Goerke said hello to appellant and they chatted. Goerke then talked with appellant's four year old daughter, Morgan Spees, who was in appellant's car with the family cat. Goerke saw appellant walk inside her apartment and the man turned back to his work. Within a matter of seconds, Goerke heard a whoosh. He turned and saw appellant coming outside the backdoor of the townhouse, followed by a ball of flames.
 {¶ 9} Goerke attended to appellant and told her to get her daughter to safety. Appellant left and Goerke made sure that his daughter, Jennifer, who was in their townhouse, got out of the building.
 {¶ 10} Although smoke was entering Jennifer Goerke's room within a minute after the explosion, Jennifer did not suffer any injuries. However, Greg Goerke was diagnosed with delayed smoke inhalation one week after the explosion.
 {¶ 11} One of the firemen who responded to the scene was Frank Schneider. Schneider helped fight the fire in appellant's townhouse and then assisted in moving some propane tanks away from the rear deck of the townhouse. Schneider was injured when he received a severe electrical shock. Upon being shocked, Schneider was dazed and confused, and lost feeling in his arm. Schneider was treated at the scene and then sent to Mercy Medical Center. He suffered from an irregular heart beat and was kept at the hospital for 24 hours for observation. Schneider testified that he still has trouble grasping things with the arm that was shocked.
 {¶ 12} Fire investigators arrived at the scene and began investigating the fire. The burn pattern indicated that the fire spread from the floor up. Fumes from what one of the investigators believed to be gasoline burned the investigator's eyes. The investigators found that there was no indication that the fire was accidental and concluded that the fire was suspicious. The investigators used a hydrocarbon indicator which indicated the presence of fire accelerants in three areas — the top of the steps on the second floor, on the first floor carpeting and on the bed near the steps that led to the first floor. The investigators brought in a trained dog which indicated for the presence of accelerants in the same areas. The investigators then took samples from those areas and sent them to the Ohio State Fire Lab. Those samples tested positive for gasoline.
 {¶ 13} After the fire, appellant began a series of telephone calls that lasted for over a week. Appellant called her husband about 11:35 a.m. on the day of the fire. She told her husband that the townhouse had been destroyed and that people were after her. Appellant made several more phone calls to her husband and family and claimed that she had been abducted.
 {¶ 14} On July 12, 2002, the day after the fire, appellant rented a storage unit in Louisville, Ohio, using a fake name. That same day, Christine Loudon, who worked in downtown Alliance, noted that her license plates were missing from her car. Evidence also showed that appellant had leased an apartment in Alliance, Ohio.
 {¶ 15} On July 16, 2002, appellant's mother received a ransom note composed of cut-out letters from a newspaper article that had reported on the fire. The note was signed by appellant and demanded $10,000.00.
 {¶ 16} Finally, on July 18, 2002, appellant telephoned her husband and told him that her abductors had left and that she was in a motel in Wytheville, Virginia. Appellant's husband called the Massillon police who arranged for local police in Virginia to investigate. The police found appellant at the hotel along with her daughter Morgan and the family cat. Appellant's car was in the parking lot of the motel with Christine Louden's license plate on it.
 {¶ 17} A few days later, a detective from the Massillon Police Department transported appellant from Virginia to Ohio. During the trip, appellant spoke with the Detective and gave him a detailed account of her abduction.
 {¶ 18} The following day, another Massillon Police Detective interviewed appellant. Appellant again gave a detailed abduction account. After a short break, the Detective confronted appellant and told her that he did not believe her. Appellant then told the Detective that she had spread kerosene or gasoline on her husband's clothes in an attempt to ruin them and placed them on the townhouse bed. Appellant also admitted that she had made up the whole abduction story.
 {¶ 19} On November 8, 2002, the jury reached a verdict and found appellant not guilty of count one, aggravated arson, but found her guilty of the lesser offense of arson, a misdemeanor of the first degree. The jury further found appellant guilty of aggravated arson and receiving stolen property as charged in the indictment.
 {¶ 20} On November 12, 2002, a sentencing hearing was conducted. Appellant was sentenced to 180 days in the Stark County Jail on the misdemeanor offense of arson. Appellant was sentenced to eight years of imprisonment for aggravated arson. In addition, appellant was sentenced to 11 months of imprisonment for receiving stolen property. The trial court ordered that the count of aggravated arson and receiving stolen property be served consecutively. The jail sentence on the misdemeanor was to be served concurrently with the two felony convictions. In addition, appellant was ordered to pay costs and restitution. The restitution consisted of $15,000.00 to Grange Insurance Company and $248,446.58 to the Central Insurance Company.
 {¶ 21} It is from these convictions and sentences that appellant appeals, raising the following assignments of error:
 {¶ 22} "I. Appellant's convictions for Arson, aggravted Arson, and receiving stolen property were against the manifest weight and sufficiency of the evidence,
 {¶ 23} "II. The trial court erred when it allowed the trial to proceed to deliberations when the appellant was seen by the jury in handcuffs during an unscheduled break and in failing to declare a mistrial.
 {¶ 24} "III. The trial court erred when it failed to make the explicit findings that demonstrated why the minimum term of imprisonment should not have been imposed per Ohio revised code 2929.14(b) and for not considering mitigating factors per the purposes and principles of felony sentencing.
 {¶ 25} "IV. The trial court erred in ordering that the two felony counts be served consecutively without sufficient evidence to support the statutory criteria or make the requisite findings.
 {¶ 26} "V. The trial court erred in imposing the maximum sentence pursuant to O.R.C. 2929.14(c).
 I {¶ 27} In the first assignment of error, appellant argues that her convictions for arson, aggravated arson and receiving stolen property were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 28} Our standard of review for manifest weight in criminal matters is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717; See also State v. Thompkins (1997),78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 29} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: ". . . The inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 30} Appellant was convicted of arson, aggravated arson and receiving stolen property. To find appellant guilty of arson, the jury had to find that appellant, by means of fire or explosion knowingly created a substantial risk of physical harm to property of another without the other person's consent.[1] To find appellant guilty ofaggravated arson, the jury had to find that appellant, by means of fire or explosion, knowingly caused physical harm to any occupied structure.[2] Finally, to find appellant guilty of receivingstolen property, the jury had to find that appellant obtained the license plate of another knowing or having reasonable cause to believe that the license plate had been obtained through the commission of a theft offense.[3]
 {¶ 31} At trial, the jury could have inferred from the evidence that appellant purchased gasoline containers and gasoline about 10:30 A.M. at a K-mart department store located near the townhouse that appellant shared with her husband By 11:30 A.M. appellant's townhouse was burning. Subsequent testing showed that gasoline had been spread throughout the townhouse.
 {¶ 32} The fire destroyed appellant's townhouse and caused damage to the building, including to another person's townhouse and personal property in the building. Further, at the time of the fire, Jennifer Goerke was present in the building. As a result of the fire, Greg Goerke and a firefighter were injured.
 {¶ 33} At the time of the fire, appellant's daughter and the pet cat had been removed to safety. Appellant placed her daughter and her cat in the car and then went back into the building. Within seconds of when appellant re-entered the building, appellant came running out of the building, followed by a fireball.
 {¶ 34} After the fire, appellant fled the scene. After a week and faking an abduction of herself and her four year old daughter, appellant was found in Virginia with a stolen license plate on her car.
 {¶ 35} Upon questioning, appellant admitted that she had spread kerosene or gasoline on some of her husband's clothes in the bedroom and made up the abduction story. Appellant had rented a storage area which was found to contain items one would need to set up an apartment and had rented an apartment.
 {¶ 36} Viewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence to support appellant's convictions for arson, aggravated arson and receiving stolen property. Further, we find that the convictions were not against the manifest weight of the evidence.
 {¶ 37} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 38} In the second assignment of error, appellant contends that the trial court should have sua sponte declared a mistrial when appellant was seen by the jury in handcuffs during an unscheduled break in the trial. We disagree.
 {¶ 39} During the trial, a bomb threat was received by Stark County officials. The jury and appellant were escorted out of the building. Appellant claims that as she was being escorted out of the room, she was handcuffed in front of the jury. Appellant then claims that she was held, in handcuffs, in front of the building while the jury exited and congregated outside of the Courthouse.
 {¶ 40} First, we note that the record does not reflect whether appellant was actually placed in handcuffs while in view of the jury. The record does, however, support appellant's contention that there was a possibility that appellant was seen by the jury while handcuffed.
 {¶ 41} In fact, the trial court addressed the issue at the resumption of the trial the next morning. The trial court stated the following on the record to counsel, without the presence of the jury:
 {¶ 42} "Just for the record, out of an abundance of caution, yesterday proceedings were, proceedings ended after the Court charged the Jury because there had been some sort of phoned-in threat to the County Office Building, not the courthouse. And as everyone in the courtroom is aware, out of an abundance of caution, the courthouse was evacuated.
 {¶ 43} "During the evacuation the jurors were escorted by two deputy sheriffs into the park area outside the courthouse, as were all the jurors that were in the building at the time and everyone else.
 {¶ 44} "And just to try to describe the scene, there were deputy sheriffs all over the area outside, some of them escorting jurors, some of them escorting other individuals. The Defendant was also one of the people escorted out by a Deputy Sheriff. Everyone was kind of courted off into different areas.
 {¶ 45} "It came to the Court's attention that at one portion of the time that the Defendant may have been outside, that she may have been handcuffed. And I spoke with the deputy [sic], and they indicated that the handcuffs were placed in a way that they believe could not be seen by jurors.
 {¶ 46} "Out of an abundance of caution, I want to bring that to everyone's attention, and I do think at least a limiting instruction ought to be given to the jurors regarding those unusual and extraordinary incidents to indicate that they had nothing in anyway to do with this case. They were unrelated and should be disregarded in their deliberation.
 {¶ 47} "Is that satisfactory, counsel?
 {¶ 48} "MR. McGINNIS: Yes, Your Honor.
 {¶ 49} "MS. MELIA: Yes.
 {¶ 50} "THE COURT: And I might ask, I will ask a follow-up question if anyone is going to be affected by the occurrences of yesterday, of what occurred after the recess; is that satisfactory?
 {¶ 51} "MR. McGINNIS: Yes, Your Honor.
 {¶ 52} "MS. MELIA: (Nods head up and down.)" Transcript of Proceedings, Vol. V, pgs. 4-5.
 {¶ 53} Counsel did not add anything to the record, nor object to the proposed handling of the situation. The parties agreed there should be a cautionary instruction.
 {¶ 54} At the close of the trial, the trial court gave the following cautionary instruction:
 {¶ 55} "[T]he Court wishes to give you a cautionary instruction regarding the events of yesterday evening just prior to recess.
 {¶ 56} "As some of you know, a call was placed to a different building in the downtown area, the Stark County Office Building. And because the call that was placed there, security felt it, out of an abundance of caution, that everyone should be vacated from this building by 4 o'clock, which we complied with. But during the time that everyone was vacated, as you know, everyone assembled in the area outside the courthouse in this park area, and the events which occurred outside and the evacuations were caused, as everyone knows, or I'm telling you were by something totally unrelated to this case. It has nothing to do with this case whatsoever.
 {¶ 57} "What you may have seen and witnessed out in this park has nothing to do with this case whatsoever. I mean you were escorted by deputies. Other jurors were escorted by deputies. Other individuals were escorted by deputies just because that was normal protocol in those events, and I want to make sure that you don't insinuate anything from the events which occurred yesterday afternoon." Id. at 6-7.
 {¶ 58} The trial court then asked the jurors if anyone would be impacted by anything that occurred during the recess caused by the bomb threat. No juror indicated that they would be affected, and the deliberations resumed. Id. at 7.
 {¶ 59} Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible. State v. Franklin
(1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. An abuse of discretion connotes more than an error of law or judgment. It implies that the trial court ruled arbitrarily, unreasonably, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 60} Ordinarily, because shackles tend to erode the presumption of innocence, an accused should be allowed to appear at trial unfettered. State v. Carter (1977), 53 Ohio App.2d 125. However, the inadvertent siting by jurors of a handcuffed accused outside of the courtroom does not create a per se mistrial. Ohio courts have held that the accused must present evidence that the jury was tainted by the sighting. State v. Payton (Aug. 8, 1994), Fayette App. No. 93-12-028. In that regard, the Ohio Supreme Court has noted that "the danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent and outside the courtroom." State v.Kidder (1987), 32 Ohio St.3d 279, 286, 513 N.E.2d 311. If jurors have inadvertently seen a defendant outside of a courtroom, while the defendant is in handcuffs, the proper procedure is for the trial court to voir dire the jury and give a cautionary instruction. See State v.Chitwood (1992), 83 Ohio App.3d 443, 449, 615 N.E.2d 257. That is what in essence happened here. Further, even if the trial court did commit an error, such error is not grounds for reversal unless it was prejudicial. Id.
 {¶ 61} At this point, we must note that appellant's counsel did not request a mistrial nor object to the trial court's handling of the situation. Thus, appellant can prevail only if the alleged error constituted plain error. "`Plain error is an obvious error . . . that affects a substantial right. State v. Keith (1997), 79 Ohio St.3d 514,518, 684 N.E.2d 47. An alleged error is plain error only if the error is `obvious,' State v. Sanders (2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90, and `but for the error, the outcome of the trial clearly would have been otherwise.' State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178,372 N.E.2d 804, paragraph two of the syllabus. See, generally, State v.Barnes (2002), 94 Ohio St.3d 21, 27-28, 759 N.E.2d 1240." State v.Yarbrough, 95 Ohio St.3d 227, 244-245, 2002-Ohio-2126, 767 N.E2d 216.
 {¶ 62} First, we note that there is nothing on the record to indicate that the jurors actually saw that appellant was handcuffed. The trial court stated that its investigation revealed that the deputies did not believe that the jury could tell appellant was handcuffed because of the way she was handcuffed. Appellant's counsel did not argue otherwise and the parties, including appellant's counsel, agreed to a cautionary instruction. Further, the trial court attempted to fashion a cautionary instruction that would instruct the jury without highlighting the fact that appellant was handcuffed. This is particularly important if in fact none of the jurors actually saw that appellant was handcuffed. Finally, all of the jurors indicated that they had not been nor would be influenced by what they saw when they evacuated the building and the trial court gave a curative instruction to avoid any possible influence from what they saw that day.
 {¶ 63} In conclusion, we find that the trial court did not commit plain error nor abuse its discretion in failing to sua sponte declare a mistrial. Accordingly, appellant's second assignment of error is overruled.
 III, IV, V {¶ 64} The next three assignments of error concern the sentences imposed on appellant for the two felony counts. R.C. 2953.08 governs the appeal of a sentence for a felony. Subsection (G)(2) of that statute states as follows:
 {¶ 65} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 66} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 67} "(b) That the sentence is otherwise contrary to law."
 {¶ 68} Thus, pursuant to R.C. 2953.08(G)(2), our standard of review on this issue is clear and convincing evidence. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. It is in accordance with this standard of review that we consider appellant's final three assignments of error.
 III {¶ 69} In the third assignment of error, appellant contends that the trial court failed to make the explicit findings that demonstrated why a minimum term of imprisonment should not have been imposed and failed to consider mitigating factors. We disagree.
 {¶ 70} Revised Code 2929.14(B) concerns the imposition of minimum sentences. That statute provides as follows, in pertinent part:
 {¶ 71} "Except as [otherwise] provided . . ., if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense . . ., unless . . .:
 {¶ 72} (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 73} The trial court found that "the shortest prison term possible will demean the seriousness of the offenses and will not adequately protect the public." Transcript of Sentencing, pg. 15. Thus, the trial court made the necessary findings to impose more than the minimum sentence. State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110,715 N.E.2d 131, syllabus.
 {¶ 74} However, appellant asserts that this court must go further and assess whether the trial court went through an analysis that supports the findings. Appellant contends that if this court would do so, it would find that the trial court's comments made during the sentencing hearing have no bearing on the 2929.14(B) findings. Thus, appellant asserts that the record thereby demonstrates that the trial court did not go through an analysis to support its finding. We disagree.
 {¶ 75} However, the trial court need not provide its reasons for imposing more than a minimum sentence. Appellant asks this court to impose such a requirement and then determine if the trial court's reasons demonstrate that the analysis was appropriate. However, this court will not impose such a duty. Upon review, the trial court made the requisite findings. Further, we find the record supports that finding. Pursuant to our standard of review and the assignment of error presented, we find that the trial court did not commit reversible error.
 {¶ 76} Appellant's third assignment of error is overruled.
 IV {¶ 77} In the fourth assignment of error, appellant argues that the trial court erred when it sentenced appellant to serve the two felony counts consecutively without sufficient evidence to support the statutory criteria or requisite findings. We agree.
 {¶ 78} R.C. 2929.14(E)(4) governs multiple sentences and states as follows, in pertinent part,:
 {¶ 79} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 . . . {¶ 80} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. . . ." Further, pursuant to R.C. 2929.19(B)(2)(c), the court "shall make a finding that gives its reasons for selecting the sentence imposed . . . if it imposes consecutive sentences under section2929.14 of the Revised Code. . . ."
 {¶ 81} Appellant concedes that the trial court made all of the requisite findings in the Judgment Entry, pursuant to R.C.2929.14(E)(4)(b). However, appellant argues that there are no facts identified in the Judgment Entry which support those findings.
 {¶ 82} Although appellant's argument is based upon the Judgment Entry, it is the trial court's findings and statements during the sentencing hearing to which this Court must look. The Ohio Supreme Court has recently stated that "when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 79 N.E.2d 473. Thus, it is the record of the sentencing hearing that this court will consider, not the Judgment Entry.
 {¶ 83} During the sentencing hearing, the trial court made the following relevant findings and comments:[4]
 {¶ 84} "Relative to the more serious factors, the Court finds, based upon the testimony which this Court heard, that at least some of the victims suffered physical harm relative to portion [sic] of the victims, that the relationship with the victims facilitated the offense in that this is an apartment where the Defendant lived with her husband and daughter; relative to recidivism Court [sic] finds that there has been no genuine remorse or remorse of any nature demonstrated or shown. . . .
 {¶ 85} "And, in fact, in this particular case the Court finds, Ms. Spees, that you had basically a total disregard for the lives of others where you undertook a scheme in which you put lives at risk and destroyed the property of others.
 {¶ 86} "And then following that you concocted an elaborate scheme to try to indicate to your family, to law enforcement and to others that you were kidnapped. You along with your four-year-old daughter basically kept everyone wondering for a period of time, and the Court finds your actions absolutely inexplicable.
 . . . {¶ 87} "Court finds that the sentences relative to the felonies will be served consecutively to, finding it necessary to fulfill the purposes of Revised Code 2929.11 and not disproportionate to the seriousness of the Defendant's conduct or the danger that the Defendant poses.
 {¶ 88} "And the court further finds that the harm caused was great or unusual. Transcript of Sentencing, pg. 15-18.
 {¶ 89} We find the trial court's findings in regard to R.C.2929.14(E)(4)(b) (as amended by 2002 H 327, eff. July 8, 2002) insufficient. The trial court finds only that "the harmed caused was great or unusual." The trial court failed to find that "[a]t least two ofthe multiple offenses were committed as part of one or more courses ofconduct, and the harm caused by two or more of the offenses so committed
was so great or unusual that no part of any of the courses of conductadequately reflects the seriousness of the offender's conduct." (Emphasis added).
 {¶ 90} Accordingly, appellant's fourth assignment of error is sustained.
 V {¶ 91} In the fifth assignment of error, appellant contends that the trial court erred when it imposed a maximum sentence when sentencing appellant on the count of aggravated arson. Specifically, appellant contends that this was not a "worst form of the offense."
 {¶ 92} R.C. 2929.14(C) sets forth the following pertinent condition under which a trial court may impose a maximum sentence:
 {¶ 93} ". . . the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense. . . ." See State v. Comersford (June 3, 1999), Delaware App. No. 98-CA-A-01-04. Additionally, a trial court must state its reasons supporting a R.C. 2929.14(C) maximum sentence finding. R.C. 2929.19(B)(2)(d).
 {¶ 94} In this case, the trial court found that appellant committed the worst form of the offense. In sentencing appellant, the trial court made the following observations at the sentencing hearing, which are supported by the record:
 {¶ 95} "Relative to the more serious factors, the Court finds, based upon the testimony which this Court heard, that at least some of the victims suffered physical harm relative to portion [sic] of the victims, that the relationship with the victims facilitated the offense in that this is an apartment where the Defendant lived with her husband and daughter; relative to recidivism Court [sic] finds that there has been no genuine remorse or remorse of any nature demonstrated or shown. . . .
 {¶ 96} "And, in fact, in this particular case the Court finds, Ms. Spees, that you had basically a total disregard for the lives of others where you undertook a scheme in which you put lives at risk and destroyed the property of others.
 {¶ 97} "And then following that you concocted an elaborate scheme to try to indicate to your family, to law enforcement and to others that you were kidnapped. You along with your four-year-old daughter basically kept everyone wondering for a period of time, and the Court finds your actions absolutely inexplicable.
 {¶ 98} "Why you would do this with your four-year-old present is beyond comprehension, and to put others with whom you've just spoken that very morning at risk also is incomprehensible." Transcript of Sentencing, pg. 14-16.
 {¶ 99} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 100} The judgment of the Stark County Court of Common Pleas is affirmed, in part and reversed, in part. This matter is remanded for resentencing.
Gwin, P.J. dissents.
Wise, J. concurs.
[1] Revised Code 2909.03(A)(1) (arson) states, in relevant part, as follows: "No person, by means of fire or explosion, shall knowingly . . . [c]ause, or create a substantial risk of, physical harm to any property of another without the other person's consent."
[2] Revised Code 2909.02(A)(2) (aggravated arson) states, in relevant part, as follows: "No person, by means of fire or explosion, shall knowingly . . . [c]ause physical harm to any occupied structure."
[3] Revised Code 2913.51(A) and 2913.71 (receiving stolen property) states as follows, in relevant part: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Revised Code 2913.71(C) states that "regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or2913.51 of the Revised Code is a felony of the fifth degree if the property involved is . . . [a] motor vehicle identification license plate . . ."
[4] Although some of the comments on appellant's actions and offenses were stated prior to imposing the consecutive sentences, we find that they state the trial court's reasons for imposing consecutive sentences.