OPINION
Appellant, Albert C. Nozik, appeals the judgment of the Lake County Court of Common Pleas, overruling his motion for judgment notwithstanding the verdict and a motion for a new trial, entered September 5, 1997;[1] and an entry filed on August 18, 1997, in which the trial court entered judgment on the jury's verdict.[2] Both matters were consolidated by this court for purposes of appeal. This appeal arises from a jury award of money damages granted in favor of appellee, Errol S. Nozik individually and as executor of the estate of his mother Sara B. Nozik ("Sara"), due to appellant's and Eleanore S. McDonald's ("McDonald") failure to transfer twenty shares of common stock in Mentor Lagoons, Inc. ("Mentor Lagoons"), to appellee and his mother, Sara.
The background to this appeal begins in 1954. In 1954, stock in Mentor Lagoons consisted of appellant owning 240 shares, Sara (then the spouse of appellant) also owning 240 shares, and a trust containing 20 shares with appellee as its named beneficiary. McDonald was named the trustee of the trust and was given a life estate in the stock, which only could terminate through her death or voluntary termination.
In 1990, appellee and his mother Sara, filed a complaint in the Lake County Court of Common Pleas for the dissolution of Mentor Lagoons. On December 7, 1992, appellant drafted a letter to appellee indicating that he was negotiating with McDonald for the acquisition of the 20 stock shares held in trust by her. The letter was subsequently received by appellee. On December 11, 1992, appellee drafted a letter notifying appellant that he would not relinquish his interest in the stock, and pointed out that when McDonald's interest in the stock terminated, such stock must be transferred to him. McDonald testified that appellee's letter was received by February 6, 1993. On February 6, 1993, McDonald terminated her interest in the trust and transferred the twenty shares of stock to appellant. Appellee was unaware of the transfer at the time.
On March 17, 1993, the Lake County Court of Common Pleas, inNozik v. Mentor Lagoons, Inc., Case No. 90-CV-000633 ("MentorLagoons I"), ordered that Mentor Lagoons be dissolved pursuant to R.C. 1701.91(A)(4), on the basis that an even number of directors were deadlocked in the management of corporate affairs and the deadlock could not be otherwise resolved. In that judgment entry, the trial court stated that Sara owned 250 shares of common stock in Mentor Lagoons, while appellant owned 230 shares and McDonald retained a life estate in 20 shares, in which appellant maintained a remainder interest. In that dissolution order, the court also stated that McDonald's 20 shares of stock must be transferred to appellee upon her death or termination in the interest of such stock. To facilitate the dissolution, the trial court appointed a receiver, pursuant to R.C. 1709.91(C), and charged him with the task of winding-up corporate affairs, selling all corporate assets, and distributing any net proceeds to the appropriate parties.[3]
Sometime in April 1993, appellee discovered that McDonald had terminated the trust by transferring the stock to appellant. Appellee then filed a complaint against appellant and McDonald for recovery of the stock shares in the Lake County Court of Common Pleas case entitled Nozik v. McDonald, Case No. 93-CV-000490 ("Mentor Lagoons II"). About that same time, on May 4, 1993, the receiver filed Dissolution of the Articles of Incorporation of Mentor Lagoons.[4]
On November 3, 1993, in Mentor Lagoons II, the trial court ordered appellant to transfer the 20 shares of Mentor Lagoons stock to appellee, its rightful owner. The record further evidences that appellant failed to comply with the trial court's order, despite the fact that this court affirmed the trial court, and the supreme court refused to grant certiorari.
On June 7, 1994, the Lake County Court of Common Pleas awarded the receiver, appointed in Mentor Lagoons I, $98,876.65 for fees and expenses incurred from March 17, 1993, to December 31, 1993. Furthermore, on December 13, 1996, the trial court ordered that the receiver be paid compensation in the amount $228,622.50 and $834.52 for expenses, for work performed from 1994 through the first nine months of 1996. In addition, the receiver was aided by an attorney, whose fees totaled $603,259.99.
The instant appeal arises from a complaint that was filed by appellee, individually and in his capacity as executor of the estate of Sara B. Nozik, on June 26, 1996. The complaint was filed in the Lake County Court of Common Pleas, seeking money damages resulting from the failure of appellant and McDonald to properly transfer the 20 shares of stock in Mentor Lagoons. The complaint was based upon the theories of conversion, tortious interference, and breach of fiduciary duties with respect to the property held in trust. The record further reveals that appellant filed a motion in limine on July 28, 1997, requesting the court to preclude any testimony concerning his alleged mismanagement of Mentor Lagoons, which was overruled. On July 28, 1997, a jury trial commenced on appellee's complaint.
On August 1, 1997, a jury verdict was returned awarding appellee, as executor, compensatory damages in the amount of $469,666.84; another verdict was filed awarding appellee, individually, compensatory damages in the amount of $37,573.35. The jury also returned two additional verdicts, one for appellee in his individual capacity and the other in his capacity as estate executor, awarding attorney fees in an amount to be determined by the trial court. Each of the verdicts awarding attorney fees stated that appellee was entitled to punitive damages, but did not provide for any monetary award of punitive damages.
On August 18, 1997, the trial court entered judgment on the jury verdicts. In that judgment entry the trial court also stated that a hearing for the determination of the dollar amount of attorney fees would be scheduled for a later date to be announced.
On September 2, 1997, in response to the court's August 18, 1997 judgment entry, appellant timely filed a motion for judgment notwithstanding the verdict, a separate motion for a new trial, and a third motion to stay execution of judgment and to set a supersedeas bond for appeal. On September 5, 1997, the trial court entered judgment overruling both appellant's motion for judgment notwithstanding the verdict and the motion for a new trial. However, the court granted appellant's motion to stay execution of the judgment, providing that he post $750,000 to satisfy the supersedeas bond. Finally, the court stayed proceedings concerning the award of attorney fees.
On September 12, 1997 appellant filed a notice of appeal from the trial court's August 18, 1997 judgment entry. On October 1, 1997, appellant filed a separate notice of appeal, in regard to the judgment entry dated September 5, 1997. Importantly, on March 4, 1998, this court consolidated each appeal and remanded the matter back to the trial court for sixty days so that the trial court could conduct a hearing in regard to the amount of attorney fees to be awarded. The trial court entered judgment on April 7, 1998, awarding appellee attorney fees in the amount of $50,000.
Appellant now timely asserts the following assignments of error:
 "[1.] The trial court erred to the extreme prejudice of A. Nozik by making malicious and prejudicial comments about A. Nozik, while he was testifying on the stand in the presence of the jury, which comments included the trial court's dismissal of A. Nozik's counterclaims by summary judgment, and by overruling A. Nozik's Motion for Mistrial predicated on such improper statements by the trial court in the presence of the jury.
 "[2.] The trial court erred to the prejudice of [a]ppellant Albert Nozik by failing to instruct the jury that [a]ppellees could have dismissed the receivership and reinstated MLI as a corporation after [a]ppellees obtained the controlling interest in MLI on November 3, 1993.
 "[3.] The trial court erred to the prejudice of [a]ppellant Albert Nozik by failing to answer the two (2) questions of law asked by the jury which related to a defense presented by Albert Nozik.
 "[4.] The trial court erred to the prejudice of [a]ppellant Albert Nozik by improperly instructing the jury that a judicially dissolved corporation cannot be reinstated.
 "[5.] The trial court erred to the prejudice of [a]ppellant Albert Nozik in overruling his motion for judgment notwithstanding the verdict.
 "[6.] The trial court erred to the prejudice of [a]ppellant Albert Nozik by failing to direct a verdict in his favor since [a]ppellees actually benefited from McDonald's attempted transfer of the 20 shares in MLI.
 "[7.] The trial court erred to the prejudice of appellant Albert Nozik by entering a verdict that is contrary to the manifest weight of the evidence.
 "[8.] The trial court erred to the prejudice of appellant [Albert] Nozik by failing to grant his motion in limine with respect to said appellant's alleged mismanagement.
 "[9.] The trial court erred to the prejudice of appellant Albert Nozik in overruling his motion for a new trial.
 "[10.] The trial court erred to the prejudice of appellant Albert Nozik when [a]ppellees had no written agreement concerning their contingent fee arrangement with their attorneys.
 "[11.] The trial court erred to the prejudice of [a]ppellant Albert Nozik by allowing [a]ppellees the right to introduce voluminous, highly prejudicial, evidence of alleged mismanagement, which was totally irrelevant to [a]ppellees' causes of action.
 "[12.] The [t]rial [c]ourt erred to [a]ppellant Albert C. Nozik's detriment by awarding attorneys' fees to Plaintiffs even though no punitive damages were awarded to Plaintiffs.
 "[13.] The [t]rial [c]ourt erred by awarding attorneys' fees to Plaintiffs when such fees violated Ohio law and public policy because Plaintiffs' attorneys improperly provided their services in this tort action on a contingent fee basis without a written agreement, in violation of Ohio Revised Code Section 4705.15(B) and Ohio Code of Professional Responsibility D.R. 5-103(A).
 "[14.] The [t]rial [c]ourt award of $55,000.00 in attorneys' fees to Plaintiffs is contrary to the manifest weight of the evidence, constitutes an abuse of discretion by the trial court and, therefore, constitutes reversible judicial error."
In the first assignment of error, appellant contends that the trial judge erred in overruling his motion for a mistrial because the judge made highly prejudicial statements in the presence of the jury, during the trial in this matter. Specifically, appellant claims that the trial judge made the following inappropriate comments to him: (1) "answer the question without a speech," (2) "you have been uncooperative," (3) "I'm going to say this in front of the jury, you know you [Albert Nozik] filed a counterclaim raising a multitude of lawsuits and I threw them out. Now don't push me anymore." Appellant further contends that those statements constitute reversible misconduct.
In reviewing a claim of alleged judicial misconduct, there exists a presumption that the trial judge is unbiased and free of prejudice. Leygraff v. Andren (Dec. 1, 1994), Cuyahoga App. No. 65811, unreported, at 8, 1994 Ohio App. LEXIS 5387. The party alleging judicial misconduct bears the burden of rebutting this presumption and demonstrating resulting prejudice. Id. at 9. The refusal of a trial court to grant a mistrial will not be disturbed on appeal absent an abuse of discretion. Goudy v. DaytonNewspapers, Inc. (1967), 14 Ohio App.2d 207, 212. Importantly, the party asserting that judicial misconduct occurred must timely object to the error allegedly committed, and must demonstrate to the reviewing court that prejudice has resulted. State v.Williams (1974), 39 Ohio St.2d 20, 25. Indeed, errors arising in the trial court, but not called to the court's attention at a time when the error could have been corrected or avoided, are waived, absent plain error. State v. Wade (1978), 53 Ohio St.2d 182,188.
In regard to the first comment, the trial judge was merely performing his judicial role of regulating the trial by directing appellant to refrain from continually answering questions in a purely self-serving, improper manner. The second comment, contrary to appellant's contention, was made outside the presence of the jury. Finally, the third comment was made only after appellant persisted in making self-serving statements as part of an attempt to relitigate matters previously resolved by the court.
The record shows that the comments made by the judge, constituting the basis for appellant's motion for a mistrial, were made on July 29, 1997. However, appellant did not file his motion for a mistrial until July 30, 1997. In addition, appellant failed to make any oral motion for a mistrial at anytime during these proceedings. The one day delay in moving for a mistrial is untimely and could have been corrected or avoided by the trial judge during the trial in the instant matter, constituting a waiver of such error. Also, there is no showing of plain error. Therefore, appellant's first assignment of error is meritless.
In the second assignment of error, appellant contends that the trial court erred to his prejudice by failing to instruct the jury with respect to a requested instruction submitted to the trial judge. The proposed jury instruction was that appellee could have dismissed the receivership and reinstated MLI as a corporation after appellees obtained the controlling interest in MLI on November 3, 1993.
The general rule concerning jury instructions provides that a party may not argue on appeal that the trial court provided an erroneous jury instruction, unless the jury instruction had been properly objected to at trial. Cleveland Electric IlluminatingCo. v. Astorhurst Land Co. (1985), 18 Ohio St.3d 268, 273. Civ.R. 51(A) requires that a party must provide a timely objection to any erroneous jury instruction:
 "On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
However, in the case of Presley v. Norwood (1973), 36 Ohio St.2d 29, paragraph one of the syllabus, the Supreme Court of Ohio established an exception to the general rule:
 "Where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and that the complaining party has unsuccessfully requested the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto [as stated in Civ.R. 51(A)]."
Yet, a party who has requested the court for a certain jury instruction, but failed to apprise the court of the correct law, or on a material issue, and has otherwise failed to comply with Civ.R. 51(A), has waived his right to appeal the jury instruction. Id. at paragraph two of the syllabus.
Appellant supported his proposed jury instruction that appellee could have dismissed the receivership and reinstated MLI as a corporation with references to R.C. 1701.07, 1701.88(A), 1701.89, and 1701.922. However, none of those statutory provisions indicates that a corporation that has been judicially dissolved and placed into receivership may be taken out of receivership and reinstated as a corporation subsequent to any later action on the part of directors of the corporation.
R.C. 1701.07 only deals with the cancellation and reinstatement of a corporation's articles of incorporation resulting from a failure to properly appoint or maintain a statutory agent.
R.C. 1701.88(A) simply states that when articles of incorporation have been cancelled, reinstatement of the articles must be achieved in accordance with R.C. sections 1701.07,1701.921, 1785.06, 5733.22, or 1701.922.
R.C. 1701.921 was repealed, effective July 22, 1994, and was limited to dealing with the reinstatement of articles of incorporation that were cancelled due to a failure to make certain administrative filings.
Next, R.C. 1785.06 is restricted to a discussion concerning the reinstatement of a "professional association."
The scope of R.C. 5733.22 is limited to the reinstatement of a corporation that has had its articles cancelled or revoked by the secretary of state "for failure to make any report or return or to pay any tax or fee."
Importantly, R.C. 1701.922 merely discusses a corporation's "rights, privileges and franchises" upon reinstatement achieved through R.C. sections 1701, 1785.06, or 5733.22.
Finally, R.C. 1701.89 is limited solely to the role of a court in directing the "winding up of affairs of [a] voluntarily dissolved corporation." In our case, Mentor Lagoons was a judicially dissolved corporation.
Based on the preceding statutory analysis, appellant has failed to demonstrate that the trial judge failed to fully apprise the jury of relevant law in his jury instructions. Accordingly, appellant's second assignment of error is meritless.
In the third assignment of error, appellant contends that the trial judge failed to respond to two questions asked by certain members of the jury, which were: (1) "In a court of law could Errol have tried to stop the receivership after controlling the majority of the stock?" and (2) "Were there any steps he could have taken to stop the receivership?" Appellant further claims that the trial judge misled the jury by failing to answer the two questions with an instruction that Civ.R. 66, coupled with R.C. sections 1701.07, 1701.88(A), 1701.89, and 1701.922, permitted appellee to have the receiver dismissed.
First, contrary to appellant's contention, the trial court did answer those questions. The trial judge responded:
 "I must answer those two questions this way: You have to decide this case on the evidence you heard and the law as I gave it to you. I can't make any further — or don't intend to make any further comment. I will, however — I'm having run off now copies of my charge, which I'll have the bailiff deliver to you, and both parties may have their exception to what I just said."
Second, appellant's argumentation in regard to Civ.R. 66 is not a correct statement of law. As discussed in the preceding assignment of error, R.C. sections 1701.07, 1701.88(A), 1701.89, and 1701.922 do not permit a judicially dissolved corporation, that was placed into receivership, to be taken out of receivership and reinstated. Importantly, Civ.R. 66 merely states: "[a]n action wherein a receiver has been appointed shall not be dismissed except by order of the court. Receiverships shall be administered in the manner provided by law and as provided by rules of court." Indeed, there is nothing within Civ.R. 66 suggesting that a final order for the judicial dissolution of a corporation can be dismissed.
Accordingly, the trial court judge did not commit any error by answering the jury's questions as he did. Therefore, appellant's third assignment of error is not well taken.
In the fourth assignment of error, appellant claims that the trial court improperly instructed the jury that a judicially dissolved corporation couldn't be reinstated. Appellant further asserts that the trial judge must give jury instructions, which are complete and provide a correct statement of law. Specifically, appellant avers that R.C. Chapter 17 permitted the reinstatement of the dissolved corporation.
The record does not disclose any evidence that the trial judge instructed the jury that a judicially dissolved corporation cannot be reinstated. Referring again to appellant's second assignment of error, it is apparent that the trial judge simply did not include in his jury charge appellant's request that the judge state that appellee could have reinstated the judicially dissolved corporation. Also, appellant fails to support his contentions with any specific statutory references within R.C. Chapter 17. In fact, there are no provisions supporting appellant's position and, moreover, this assignment of error is repetitive of the second and third assignments of error. Thus, appellant's fourth assignment of error is not well-taken.
Appellant asserts three claims in his fifth assignment of error that the trial court erred in overruling his motion for judgment notwithstanding the verdict: (1) appellee was not entitled to damages since there is no evidence demonstrating that appellee was damaged by the failure of McDonald's stock transfer to appellant; (2) appellee could have mitigated damages by dismissing the receiver pursuant to Civ.R. 66 and reinstating the corporation pursuant to Chapter 17 of the Ohio Revised Code; and (3) appellee is not entitled to damages because the trial judge improperly instructed the jury.
Civ.R. 50(B) is the rule which governs a motion for judgment notwithstanding the verdict. It states, "a party may move to have [a] verdict and any judgment thereon set aside and to have judgment entered in accordance with [the] motion * * *. [B]ut no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. * * *" A motion for a judgment notwithstanding the verdict presents a question of law regarding the sufficiency of the evidence. See Jenkins v.Krieger (1981), 67 Ohio St.2d 314, 317-319. Thus, if reasonable minds could reach different conclusions regarding the evidence, such motion must be denied. See, generally, MotoristsMut. Ins. Co. v. Hamilton Twp. Trustees (1986), 28 Ohio St.3d 13.
The evidence presented at trial revealed that as a result of the deadlock resulting from appellant's failure to deliver the twenty shares of stock to appellee, Mentor Lagoons was ordered dissolved and a receiver was appointed. Furthermore, there is substantial, even conclusive, evidence that the receivership devalued the assets of Mentor Lagoons by incurring numerous expenses: (1) from March 1993 to December 1993, the receiver was awarded $98,876.65 for expenses and fees; (2) later the receiver received compensation in the amount of $228,622.50; and (3) attorney fees totaled $603,259.99. Therefore, reasonable minds could conclude that appellant's failure to transfer the twenty shares of stock resulted in damages to appellee and his mother, Sara.
Additionally, appellant's second claim does not constitute grounds for the trial court to award judgment notwithstanding the verdict because Civ.R. 66 does not adequately support his proposition that appellee could have stopped the receivership in the given circumstances, or that stopping the receivership would have mitigated the damages incurred. Also, we have addressed appellant's Chapter 17, Ohio Revised Code arguments previously, and found them to be meritless. Aside from referencing Civ.R. 66 and R.C. Chapter 17, appellant's contentions are unsupported by any references to applicable case law, and are otherwise unconvincing.
Finally, appellant's claim that the trial court provided improper jury instructions, has been addressed and overruled. For the reasons discussed, appellant's fifth assignment of error is meritless.
In the sixth assignment of error, appellant contends that the trial court erred in overruling his motion for a directed verdict. Appellant argues that his motion for a directed verdict should have been granted because appellee did not suffer damages from his failure to transfer the twenty shares of stock, and appellee failed to stop the receivership.
A motion for a directed verdict is governed by the same standards applicable to a motion for judgment notwithstanding the verdict. McNees v. Cincinnati St. Ry. Co. (1949), 152 Ohio St. 269, paragraph two of the syllabus.
This assignment of error is repetitive of the previous assignment of error and is overruled on the same grounds as stated in the analysis of the fifth assignment of error.
Appellant contends, in his seventh assignment of error, that the jury verdict was against the manifest weight of the evidence.
Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, states:
 "[J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77 * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross (1980), 64 Ohio St.2d 203 * * *." (Parallel citations omitted.)
As stated in addressing appellant's fifth assignment of error, there was conclusive evidence indicating that several hundreds of thousands of dollars were paid out of Mentor Lagoons to satisfy the expenses and fees incurred as a result of a judicial dissolution ordered when the company engaged in an incurable deadlock among the shareholders. The evidence further reveals that this deadlock remained when appellant failed to properly transfer the stock shares to appellee. Accordingly, the jury verdict awarding damages as a result of appellant's failure to transfer the stock is not against the manifest weight of the evidence. Therefore, appellant's seventh assignment of error is not well-taken.
In the eighth assignment of error, appellant argues that the trial court erred to his prejudice by failing to grant his motionin limine regarding testimony offered about his alleged mismanagement of Mentor Lagoons, which was irrelevant.
 "A motion in limine may be used in two different ways: (1) as the equivalent of a motion to suppress evidence, which is either not competent or improper because of some unusual circumstance; and (2) as a means of raising objection to an area of inquiry to prevent prejudicial questions and statements until the admissibility of the questionable evidence can be determined during the course of the trial.
"* * *
 "`As related to trial, a motion in limine is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury.'" Riverside Methodist Hosp. Assn. v. Guthrie (1982), 3 Ohio App.3d 308, 310, quoting, in part, State v. Spahr
(1976), 47 Ohio App.2d 221.
However, a trial court's failure to sustain a motion in limine
constitutes reversible error only if the failure actually prejudices the movant. Caserta v. Allstate Ins. Co. (1983),14 Ohio App.3d 167, 170-171.
In addition, Evid.R. 607 allows the credibility of a witness to be attacked by any party to a lawsuit. Evid.R. 608 permits opposing counsel to attack a witness' character for truthfulness by cross-examination, but the scope of such examination is subject to the trial court judge's discretion.
In the instant matter, appellee engaged in a cross-examination of appellant's mismanagement of Mentor Lagoons only after appellant testified that his management was "very good." Contrary to appellant's contentions, appellee's cross-examination was relevant to the trial because it was used solely to impeach appellant's character for truthfulness. Importantly, appellee's attempt to impeach the credibility of appellant was limited to cross-examination and extrinsic evidence was not introduced. Furthermore, Guthrie states that the trial judge possesses the inherent discretion to rule on such motion. Finally, in Caserta, it was held that a failure to sustain a motion in limine is reversible only if the failure actually prejudiced the movant.
Our review of the record reveals that appellee's cross-examination complied with the rules of evidence, the trial court did not abuse its discretion in overruling appellant's motion in limine, and appellant has failed to demonstrate that he was actually prejudiced. Thus, appellant's eighth assignment of error is without merit.
In appellant's ninth assignment of error, he argues that the trial court erred in overruling his motion for a new trial because the trial judge failed to provide adequate jury instructions; admitted highly prejudicial, irrelevant evidence; and the verdict was against the manifest weight of the evidence. In addressing appellant's previous assignments of error, this court has determined that the trial judge provided adequate jury instructions, did not admit prejudicial, irrelevant evidence, and the verdict was not against the manifest weight of the evidence. Hence, appellant's ninth assignment of error is meritless.
In the tenth assignment of error, appellant avers that the jury's award of attorney fees, the amount of which was to be determined by the trial judge, must be reversed because appellee did not have a written contract with his attorney for contingency fees. For the reasons articulated in addressing appellant's twelfth assignment of error, this assignment of error is rendered moot.
Appellant's eleventh assignment of error again challenges the introduction of "evidence" of his mismanagement of Mentor Lagoons, which is irrelevant to the current action. This assignment of error is duplicative of the eighth assignment of error and is, therefore, overruled.
In his twelfth assignment of error, appellant claims that the trial court erred by awarding attorney fees to appellee when the jury failed to award punitive damages.
The record clearly reveals that the jury submitted two verdict forms with the trial court in which punitive damages were found to exist against appellant. In one verdict form, filed on August 1, 1997, the jury stated, "[w]e the jury, being duly impaneled and sworn, find on the complaint of [appellee] Errol Nozik, Executor of the Estate of Sara B. Nozik, for punitive damages against [appellant] Albert C. Nozik, in favor of Errol Nozik, Executor." In that verdict form, the jury assessed the amount of punitive damages as zero dollars, but stated that "Errol Nozik, Executor, [is] entitled to an award of attorney fees." In another verdict form, also filed on August 1, 1997, the jury stated, "[w]e, the jury, being duly impaneled and sworn, find on the complaint of [appellee] Errol Nozik, [i]ndividually, for punitive damages against [appellant] Albert C. Nozik, in favor of Errol Nozik" individually. The jury also assessed punitive damages in the amount of zero dollars, and stated that "Errol Nozik, [i]ndividually, [is] entitled to an award of attorney fees."
Finally, in a judgment entry dated August 18, 1997, the trial court held that the jury awarded attorney fees against appellant in an amount to be determined by the court. On April 7, 1998, after conducting a hearing on the jury's verdict awarding attorney fees, the trial court entered judgment awarding appellee, individually and as executor of the estate of Sara Nozik, attorney fees in the amount of $50,000.
Since the inception of Ohio's legal system, the recovery of attorney fees has been governed by the application of the "American Rule." In the case of Krasny-Kaplan Corp. v. Flo-Tork,Inc. (1993), 66 Ohio St.3d 75, the Supreme Court of Ohio addressed the issue of whether a distributor of a product is entitled to indemnification for attorney fees from the manufacturer of the product, when both parties are defendants in a products liability action. In affirming the decision of the court of appeals, which held that the manufacturer was under no obligation to indemnify the distributor, the Supreme Court stated that the American Rule requires each party involved in litigating a dispute to pay his or her own attorney fees in the absence of statutory authorization, a finding of "bad faith," or an enforceable contract providing for the apportionment of such fees. Id. at 77-78. See, also, State v.Ungaro (1988), 39 Ohio St.3d 191, 193; Nottingdale Homeowners'Assn., Inc. v. Darby (1987), 33 Ohio St.3d 32, 33; Sorin v. Bd. ofEdn. (1976), 46 Ohio St.2d 177, 179. The recent pronouncement by the Supreme Court in Flo-Tork on the issue of attorney fees appears to be a straightforward and crisp restatement of its conception of the American Rule without any attendant, ambiguous appendages which were contained in some of its earlier opinions on this subject.
Attorney fees also may be awarded when there has been a finding of actual malice and an award of punitive damages. Digital Analog Design Corp. v. North Supply Co. (1992), 63 Ohio St.3d 657,662; Charles R. Combs Trucking, Inc. v. International HarvesterCo. (1984), 12 Ohio St.3d 241, 245; Columbus Finance, Inc. v.Howard (1975), 42 Ohio St.2d 178, 183-184. It is important to note that the American Rule of attorney fees must not be confused with the "English Rule," which provides that the prevailing party in a legal dispute will be awarded attorney fees. Chambers v.Merrell-Dow Pharmaceuticals, Inc. (1988), 35 Ohio St.3d 123, 133.
In the instant matter, none of the exceptions to the American Rule are applicable. The record reveals that there are no statutes or contractual provisions which apply to this dispute and permit appellee to recover attorney fees. Furthermore, there was no finding by the jury that appellant acted in bad faith. Finally, although the jury indicated that appellant was liable for punitive damages, the jury failed to make an actual award of punitive damages and did not find that appellant acted with malice. Accordingly, there was no legal basis for awarding appellee attorney fees. Therefore, the trial court abused its discretion by awarding appellee attorney fees in the amount of $50,000. For the above stated reasons, appellant's twelfth assignment of error is well-taken. Thus, the award of attorney fees to appellee must be reversed.
In the thirteenth assignment of error, appellant claims that the trial court erred in awarding attorney fees to appellee because his attorneys improperly provided their services in this action on a contingent fee basis without a written agreement. This assignment of error is duplicative of the tenth assignment of error and is, therefore, not well-taken.
In the last assignment of error, appellant contends that the trial court abused its discretion in awarding appellee $55,000 in attorney fees because that amount is contrary to the manifest weight of the evidence. Based on the determination reached in addressing appellant's twelfth assignment of error, this assignment of error is rendered moot and is, therefore, without merit.
For the foregoing reasons, the appellant's assignments of error are not well-taken, with the exception of the twelfth assignment of error. Thus, the judgment of the Lake County Court of Common Pleas is affirmed in part, and reversed in part with respect to the twelfth assignment of error, and judgment is entered in behalf of appellant on the issue of the award of attorney fees with costs to appellant.
 ____________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., O'NEILL, J., concur.
[1] Court of Appeals Case No. 97-L-252.
[2] Court of Appeals Case No. 97-L-235.
[3] On appeal, in the case of Nozik v. Mentor Lagoons,Inc. (May 9, 1994), Lake App. No. 93-L-057, unreported, this court affirmed the trial court's dissolution order.
[4] On July 8, 1997, the Ohio Secretary of State declared that Mentor Lagoons was no longer an active entity.